MARY GRAY *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.   January 18, 1897.— February 26, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Railroad — Negligence in Management of Entrance to Station — Passenger — Master and Servant — Inference from Evidence.*

An action may be maintained against a railroad corporation for injuries sustained by a person, who, while entering its station for the purpose of taking a train, is struck and knocked down through the act of the defendant's servant in ejecting a drunken man from the station.

In an action against a railroad corporation for personal injuries occasioned to the plaintiff while entering its station, if he testifies that he had travelled over the defendant's road for fifteen years, that he had passed through this entrance a great many times, and that, after the accident, he was helped to the waiting room and took the train for home, it may be inferred, in the absence of anything to the contrary, that he was within the defendant's implied invitation to enter there.

In an action against a railroad corporation for injuries sustained by a person while entering its station, through the act of its servant in ejecting a drunken man from the station, if there is evidence tending to show that the servant was employed specially for the purpose of keeping the men's waiting room and closet clean and in proper condition, and that it was a part of his duty to keep the room and closet free from loafers, the jury may find that, in ejecting the drunken man, he was engaged in doing what he was employed to do, and, if this was so, the defendant may be held responsible, even although the servant may have exceeded his detailed instructions; and, in the absence of anything to show the contrary, or of any question raised upon the point at the trial, it may be inferred that the drunken man was found in the men's waiting room or closet rather than in one of the other rooms opening from the corridor where the accident occurred.

TORT, for personal injuries occasioned to the plaintiff on April 24, 1894, while entering the defendant's station in Boston for the purpose of becoming a passenger on one of its trains, by the alleged negligence of the defendant in the management of the entrance to the station. Trial in the Superior Court, before *Dunbar*, J., who allowed a bill of exceptions, in substance as follows.

It appeared in evidence that, in going to the station of the defendant, the plaintiff entered through a porch which was connected with one of the entrances of the station and was about twelve and a half feet wide and about fourteen feet in length; that then she stepped up one step into a passageway, which was about forty feet long and twelve feet wide, having on its right hand side the men's waiting room, with an entrance thereto about twenty-six feet from the step between the porch and the entry, and in the rear of the waiting room a toilet room connecting therewith; that on the left of the entry there was a general waiting room for passengers, with doors leading thereto about opposite to the door to the men's waiting room; that at the extreme end of the entry was a barber's shop with a door opening into the entry; and that there were swinging doors in the entry about seventeen feet from the entrance to the men's waiting room.

The plaintiff testified that, while she was passing along the entry and between the outer entrance and the swinging doors across the entry, and after she had gone a few feet, she saw a colored man and a white man coming through the swinging doors; that the colored man had the white man by the shoul-

ders, and was pushing him through the swinging doors; that she turned into the left close to the building, and thought they would have plenty of room to pass her, but they hit her on the side and she fell, receiving the injuries complained of; that they were coming pretty fast; that the colored man helped her up, and said that the white man was drunk; that she was helped to the waiting room for ladies, and took the train for home; that she had seen this colored man in the station several times before, and that she should think he was dressed in working clothes, "sometimes with blue clothes on"; that she had seen him one day sweeping out the entrance, and did not remember that she had ever seen him do anything else; and that she had travelled over the defendant's road for fifteen years, and had passed through this passageway a great many times.

Walter Paige, called as a witness by the plaintiff, testified that, during the year prior to the accident, he came to Boston from Stoneham about once a week, arriving at the defendant's station; that he had seen in April, 1894, before the accident, a colored man in the men's room, whom he identified in the court room as the person referred to in the plaintiff's testimony; that he had seen him cleaning the men's waiting room, polishing boots, and speaking occasionally to people in the seats, who, after he had talked with them, would sit up straighter or go out of the room, and his best recollection was that he had seen him put his hands on them and give them a shake and wake them up; that he spoke to them when in the act of waking them up, but he did not know what he said; and that he did not remember ever seeing him try to pull these men out of their seats, or lead anybody out.

Frank E. Trask, a witness called by the plaintiff, testified that he was a police officer of the city of Boston, and in April, 1894, and for about twelve years before that, his beat was in the vicinity of the defendant's station; and that while he was about that station he was acquainted with the colored man in question. He was asked what he had seen this colored man do during the two years prior to April, 1894, and he answered, "He was cleaning the gents' waiting room and the gents' toilet room attached to the same. I have seen him go into the closet and wake men up and have conversation with them, and in con-

sequence of that conversation the men went out. I never saw any acts on his part other than shaking them up and waking them up." He further testified that the colored man would hold the closet door open for them to go out, and sometimes acted as agent for the witness in that matter; that he never saw him eject anybody; and that he could not say that he ever had seen him go to the door with these people.

Leonard S. Bean, called as a witness by the defendant, testified that he had been station agent at this station for about ten or twelve years; that he hired this colored man, whose name was Warren, a year or two before April 24, 1894, and employed him to clean the men's toilet; that he was carried on the pay roll as "Cleaning of the gents' toilet"; that nobody had any authority to give him instructions aside from himself, unless it might be one of the witness's superior officers, but he never knew of instructions being given him other than what he gave himself; and that all the duties he was told to perform were to keep the men's waiting room and toilet clean and in proper condition. He was then asked whether there was anything else that he employed Warren to do, or instructed him to do; and he answered, " I told him, when men got in the closets there asleep and loafing, to wake them up, and also in the gents' waiting room." He testified further, that, if they did not go out, Warren's instructions were to call the officer in front, one of the city officers, or one of the special officers or police of the railroad who were stationed at the gate; that he never saw Warren removing anybody from the station; that he never saw him lay hands upon anybody except to wake them up; and that, prior to April, 1894, he never knew or heard that Warren ever laid hands on people to eject them from the station.

On cross-examination, the witness testified that it was a part of Warren's duty to keep the men's waiting room and closet clear from loafers.

It was not disputed that, at the time of the accident, the station referred to was under the defendant's control; and that the plaintiff was in the exercise of due care.

At the close of the evidence, the defendant asked the judge to rule that the action could not be maintained, and to direct the

jury to return a verdict for the defendant, which the judge refused to do ; and the defendant excepted.

The judge submitted the following questions to the jury :

" 1. Did the defendant use reasonable care in the management of the passageway?

" 2. Was the defendant's servant, Warren, acting within the scope of his employment in ejecting the other man ? "

The jury answered the first question in the negative, and the second question in the affirmative, and returned a verdict for the plaintiff; and the defendant alleged exceptions.

*G. F. Richardson*, (*G. R. Richardson* with him,) for the defendant.

*M. T. Allen*, (*J. H. Murphy* with him,) for the plaintiff.

ALLEN, J.   The defendant contends that there was no evidence that it failed to use reasonable care in the management of the passage.   This passage or corridor was a general entrance for passengers and others who were within the implied invitation of the defendant to enter the station ; and it was the defendant's duty to use reasonable care to keep it safe for them.   The trouble came, not from the unexpected act of a stranger, but from the act of one of the defendant's servants, in ejecting a drunken man.   The defendant suggests that the danger of injury of this kind was so remote and improbable that it could not reasonably have been anticipated.   This argument would have more force if the act causing the injury had come from a stranger. But it might be found to be negligent management not to keep the corridor free from violent acts of the defendant's own servants, which were dangerous to persons entering there for legitimate purposes.   The defendant also argues that there was no evidence that the plaintiff was a passenger.   She testified that she had travelled over this road for fifteen years, had passed through this passage a great many times, and that after the accident she was helped to the waiting room for ladies, and took the train for home.   In the absence of anything to the contrary, it might be inferred that she was within the defendant's implied invitation to enter there.

The defendant further contends that there was no evidence that their servant was acting within the scope of his employment in ejecting the drunken man.   There was evidence tend-

ing to show that he was employed specially for the purpose of keeping the men's waiting room and closet clean and in proper condition, and that it was a part of his duty to keep the room and closet clear from loafers. The jury might well find from the evidence, that in ejecting the drunken man the servant was not " on a frolic of his own," (*Joel* v. *Morison,* 6 Car. & P. 501,) but was engaged in doing what he was employed to do. If this was so, and if his act of ejecting the drunken man was done for the purpose or as a means of keeping the men's waiting room clear from persons in that condition, then the defendant might properly be held responsible, even although he might have exceeded his detailed instructions. *Southwick* v. *Estes,* 7 Cush. 385. *Howe* v. *Newmarch,* 12 Allen, 49. *Bowler* v. *O'Connell,* 162 Mass. 319, and cases there cited.

The defendant now suggests that it did not appear at the trial that the drunken man came from the men's waiting room or closet. A door opened from the corridor into that waiting room, two other doors into the general waiting room, and one at the end of the corridor into the barber's shop. So far as appears, no doubt was expressed at the trial that the drunken man had been in the men's waiting room or closet, and the defendant's servant was not called as a witness. The servant was apparently acting in the performance of what he thought to be his duty, and in the absence of anything to show the contrary, or of any question raised upon the point at the trial, it might be inferred that the drunken man was found in the men's waiting room or closet rather than in the barber's shop or general waiting room.

There was no error in submitting the case to the jury.

*Exceptions overruled.*