CHRISTOPHER HERD vs. BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk.    October 16, 1928. — November 27, 1928.

Present: CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence*, Of person in charge of child, Street railway.

At the trial of an action against a street railway company for personal
injuries received by a child four years and two months of age, there
was evidence that the plaintiff was too young to care for himself; that
just before the accident he had been in charge of an older sister who,
within five minutes of the accident, had left him on the back steps of a
first floor piazza while she went upstairs on an errand, telling him to
sit on the steps until she came down; that during her absence the plain-
tiff and a companion tried to drag a hammock across the street railway
tracks; that the hammock was on the tracks, when the defendant's car
came along and ran over it, that the companion let go, but the plaintiff
hung on and was dragged under the car; that "At that time the car
was slowing up to stop to let a passenger on at the white post"; that
the car was in three parts, a forward and a rear car and a vestibule
between; that there was no traffic in front of the car, and nothing ap-
parently to obstruct the motorman's view; and that the "whole front
car went by before . . . [the plaintiff] was dragged under the vestibule
of the center compartment." *Held*, that
    (1) The question of the due care of the plaintiff's caretaker was
for the jury;
    (2) There was evidence of negligence of the motorman.

TORT for personal injuries to the plaintiff sustained
when, on May 29, 1920, on Western Avenue, Boston, he was
run over by a street car of the defendant.   Writ dated May
18, 1922.

The action was tried in the Superior Court before *Whiting*,
J.   Material evidence is stated in the opinion.   The judge
ordered a verdict for the defendant and reported the action
to this court with the stipulation that, if the case should
have been submitted to the jury, judgment was to be entered
for the plaintiff in the sum of $12,000; otherwise judgment
was to be entered for the defendant.

*T. W. Proctor*, (*R. W. Nason* with him,) for the plaintiff.
*H. F. Hathaway*, for the defendant.

CARROLL, J.   The plaintiff was injured on May 29, 1920. He was at that time four years and two months old.   May 29 was a pleasant day.   The jury could have found that the plaintiff was one of seven children living with his mother and father.   His mother saw him a short time before the accident "on the back piazza down stairs and [his sister] Annie was with him."   Annie was then between twelve and thirteen years of age.   Mrs. Herd testified that she went upstairs to her tenement on the second floor; that Annie was with her; that ". . . [Annie] got a milk bottle and got some money. She then went down stairs.   While she was on her way down stairs . . . [the witness] heard of the accident to . . . [her] boy"; that she last saw the plaintiff "before . . . [she] saw him on the steps about four o'clock.   He was then with his sister Annie.   They two were just at the house to go out. When they returned . . . [she] was down on the back piazza . . . .   While . . . [Annie] was upstairs with . . . [her] Christopher strayed away from the back steps of . . . [their] house and in some way got out on to Western Avenue and got hurt."   She also testified that the plaintiff "could not take care of himself because he was too young, too small."

Annie testified that she had been out with the plaintiff during the afternoon of the day he was hurt; that on their return her "mother was then on the bottom piazza on the top step. . . . [The witness] had some talk with her.   Christopher was then sitting on the steps.   After this talk with . . . [her] mother . . . [the witness] went directly up stairs. Before . . . [she] went up stairs . . . [she] told Christopher to sit on the steps until . . . [she] . . . came down stairs. . . . [she] was up stairs about two or three minutes. . . . From the time . . . [she] left Christopher on the steps" until she heard of the accident about five minutes passed.

According to the testimony of Kenneth Tirrell, he and the plaintiff were attempting to carry a hammock across Western Avenue.   He testified: "We started to come across the street"; the hammock was across the street railway track "and the car started to come and ran over the hammock and Christy went under the car. . . . When the hammock was across the tracks or just before the hammock was

across the tracks both of us had hold of it. This was before the car came along. When the car came along I let go of the hammock but Christy kept hold of it and the car pulled him under. The car stopped after it ran over the hammock. When the car stopped Christy was under the car."

It appeared that one of the defendant's cars "coming on the inbound track" struck the plaintiff. There was evidence that the street car "is called trailer, or snake car, that is one of those cars that have two cars about the same size with a smaller car in the center." There was also evidence tending to show that the plaintiff ran into the car. As stated by one witness, "He just dove as though trying to grab the hammock and went straight in. At that time the car was slowing up to stop to let a passenger on at the white post"; the "whole front car went by before he was dragged under the vestibule of the center compartment or kitchenette as it is called. The boy was not involved in the front car at all."

Assuming that the plaintiff was too young to care for himself, the care of the mother and sister was a question of fact for the jury. Neither of them abandoned the plaintiff; they intended to be absent for only a short time. When they entered the house the plaintiff was sitting on the back stairs; they had no notice he was to leave this place. The jury could find that the mother was not lacking in proper care in permitting the plaintiff to remain on the steps and was not careless as matter of law in entrusting him to the custody of his sister, if they found this to be the fact. The elder sister, the jury could find, was not careless in going into the house; she expected to return in a few minutes and told the plaintiff "to sit on the steps until . . . [she] returned." *McDonough* v. *Vozzela*, 247 Mass. 552, and cases cited. *Coldiron* v. *Worcester Consolidated Street Railway*, 253 Mass. 462. *Pinto* v. *Brennan*, 254 Mass. 298. *Brennan* v. *Boston Elevated Railway*, 261 Mass. 318.

There was evidence of the negligence of the motorman. There was no traffic in front of the car, and nothing apparently to obstruct his view. He could have seen the plaintiff, and if the jury believed he had hold of the hammock, they could find that the car was driven against the hammock

in such a way that the plaintiff was dragged under the car. If the jury found these facts to be true, they could find that the motorman was negligent. *Brennan* v. *Boston Elevated Railway, supra.*

According to the report, judgment is to be entered for the plaintiff for $12,000.

*So ordered.*