# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

VINCENT CAPANO, administrator, *vs.* ANTONIO MELCHIONNO.

ANTONIO MELCHIONNO, petitioner.

Suffolk.    May 11, 1936. — March 29, 1937.

Present: RUGG, C.J., CROSBY, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence,* Due care of person in charge of child, Due care of child, In use of way, Motor vehicle. *Evidence,* Presumptions and burden of proof. *Practice, Civil,* Requests, rulings and instructions, Charge to jury, Amendment, Exceptions, Waiver, Pre-trial report. *Motor Vehicle,* Registration, Operation.

A mother, who had left her child, four years and eleven months of age, in charge of older children in the kitchen of a second floor tenement with the door leading therefrom to the street locked while she attended to household duties in a nearby room, properly could be found to have been his custodian and exercising due care for his safety although without her knowledge he went from the house to a street and was run over.

There being evidence that a boy, four years and eleven months of age, was intelligent and healthy, it could not properly be ruled as a matter of law that he was incapable of exercising due care for his own safety; and if he was found capable of exercising such care, he was entitled to the benefit of G. L. (Ter. Ed.) c. 231, § 85.

Evidence, that the driver of an ice truck, returning to it from a nearby house, found children hanging to its back whom he pushed away from it and then entered the cab and, after calling a warning to a child whom he saw still hanging to the back, started the truck, which

was partly on the sidewalk, without any further precaution to protect the children, warranted a finding that the driver was negligent when he ran over one of the children, although the evidence did not show just how the accident happened.

Exceptions to a failure by a trial judge to give in terms instructions asked for in a disproportionate number of requests for instructions were overruled where at the close of the charge the judge asked the excepting party if he desired to call his attention to any particular requests and the excepting party replied that he did not.

An exception to a statement in a charge to a jury that there was certain testimony and that there was "no evidence apparently . . . that would give you any other picture" was overruled, it not appearing that the statement was inaccurate or misleading.

Instructions, in substance that a motor vehicle was "not properly operated" if it was operated by one who was a part owner thereof under a registration which did not include his name as part owner, were in substantial conformity to law.

The defendant in an action for conscious suffering and death of one run over by a motor vehicle suffered no harm from the allowance, at the close of the evidence, of an amendment to the declaration adding to original counts based only on negligence counts based on illegal registration of the vehicle, or from instructions bearing on the counts added by amendment, where it appeared that the plaintiff before retirement of the jury agreed that, if there were a finding for the plaintiff on the negligence counts there need be no finding on the counts added by amendment and the jury found for the plaintiff on all counts.

By causing to be transmitted to this court in accordance with the provisions of § 135 of G. L. (Ter. Ed.) c. 231, a bill of exceptions allowed by the trial judge, the excepting party admitted that the case was ripe for "final preparation and printing of the record for the full court" and waived a right to present a petition under § 117 to establish the truth of different exceptions.

An exception by a defendant to the refusal by a trial judge to permit him "to read" a "pre-trial report into the record" and to the denial of his motion "that the pre-trial report be made part of the record" was without merit, where it appeared that the judge presiding at the trial on the merits did not regard a statement in the pre-trial report, "Amendments: none," as binding upon the actual conduct of the trial or as preventing him from allowing an amendment to the declaration at the close of the evidence, to which the defendant also excepted.

TORT. Writ in the Superior Court dated September 26, 1933.

The action was tried before *Swift*, J. There were verdicts for the plaintiff. The defendant alleged exceptions.

PETITION by the defendant in the above action filed on February 11, 1936, for the establishment of exceptions.

*J. J. Mulcahy,* (*M. K. Campbell* with him,) for the defendant-petitioner.

*E. M. Dangel,* (*L. E. Sherry* with him,) for the plaintiff.

I.

RUGG, C.J.   The bill of exceptions will be considered first.

This is an action of tort by the administrator of the estate of Paul Capano, who at the time of his death on August 10, 1933, was about four years and eleven months of age.   There were two counts in the declaration as originally filed, one to recover compensation for the death of the plaintiff's intestate, and the other to recover compensation for his conscious suffering, both alleged to have been caused by the negligent operation of a motor vehicle by the defendant on a public way in Revere in this Commonwealth.   The case was referred to an auditor, whose findings of fact were not to be final.   The auditor found for the defendant on both counts on the ground that the defendant as a reasonably prudent man did all that he should have done, and that there was no evidence of his negligence.   The case was tried to a jury.   After an amendment adding two counts to the declaration, allowed after the close of the evidence and hereafter described, a verdict was returned in favor of the plaintiff on each count.

There was evidence tending to show these facts:   The defendant, on the forenoon of a dry and warm August day, was peddling ice from a motor truck with an open express body twelve feet long and a cab.   The entire length of the body of the motor truck was about nineteen to twenty feet. There were windows on both sides and in the back of the cab.   It was not very difficult for the operator to look to the back of the truck out of the back window.   There was a tailboard on the rear of the truck.   The sides of the body were about one and one half feet high.   There were no mudguards.   There were four shifts forward and one in reverse. The defendant had two helpers, but he drove into George Street without them.   George Street is about twenty-eight to thirty feet wide from fence to fence.   The defendant

testified that he parked his motor truck containing nine bars of ice, each weighing three hundred pounds, so that its side was about a foot to a foot and a half from, and parallel with, the sidewalk, and its cab was in front of the house where the plaintiff's intestate lived. The sidewalk was made partly of concrete and partly of dirt. There was no curbstone, but in place of it a dirt shoulder which sloped into a dirt gutter. There were children nearby when the defendant stopped his motor vehicle and went into the house. When he returned a moment or two later, there were five or six children "hanging on the back of his truck." He could not recognize any of them. They were five to seven years old. He gave each of them a piece of ice and pushed them onto the sidewalk, and "they were all up against the fence . . . and then he walked around the truck and got into it on the side . . . and after he gave the children the ice he looked all around to see if there was anybody else . . . the children were all fairly small," five to seven years of age, and he knew that he ought to be more or less careful with children of that size. He got into the truck from the left side and then looked out of the rear window, "and he saw a pair of hands hanging on the tail-board; he hollered 'Get out of there' and the hands left the truck and he started to go." But he looked around to the back before he started to go. They were very small hands. They were on the platform of the truck as if reaching for a piece of ice. When he saw these hands, he did not know whether it was one of the children who had moved from his place near the fence, or not. He did not get out of the truck to see what happened to the child, and did not "offer to return to go back to the rear of the truck again." Then "after seeing the hands and telling them to get off, he put the truck in first speed and started going; he went ahead about two feet and felt the right rear wheel go into the air; and then he went about the length of the truck and he heard the kids hollering and thought he had dropped some ice and stopped the truck and got out and walked to the back of the truck and saw a boy lying in the street." As he was sitting in the cab, "in the way he was moving

he could not see anything to indicate whether a child was between the right rear wheels . . . he doesn't know how the accident happened or how the boy got hurt; that he never claimed he didn't hurt the boy with his truck." At no time did he drive so that the rear tire of the truck went up on the sidewalk. He testified further: "I wasn't going to bother with kids; I had work to do." He did not think that any of the children would return to his truck, but he looked around to the back before he started. He could see the left side of the truck from the window, but could not see the right side. In reply to the question, "didn't it occur to you . . . that with small children on a sidewalk that was not divided by a curbstone, right near the right hand side of the truck," where you could not see, "didn't it occur to you that you ought to have gotten down from the truck so as to be sure that everything was all right on your right hand side before you started?" the defendant replied: "Well, if I had to do that I should be doing it all day long."

The testimony of the mother of the intestate was in substance that, with her husband and seven children, the oldest of whom was eleven years old, she lived on the second floor of the house on George Street at which the defendant stopped his truck. On the morning of August 10, she was not feeling well and there was a late breakfast. The intestate and all the other children were left in the kitchen in charge of the two oldest while she went into a bedroom. There was only one door in the kitchen. There was a small lock on that door and it was fastened. In about two or three minutes after leaving the kitchen, she heard a scream and on returning found the two oldest and the youngest in the kitchen and that the others had run outside. The intestate was about the right size for his age, had always been well, and was very smart. She did not like to have him go on the street, or even sit on the piazza, unless his oldest brother or sister was with him. She went out and saw the truck. The "right rear wheels were about a foot from the street on the sidewalk whereas the front wheels were in the street." All she saw were

"stains of blood on the sidewalk and the marks of automobile wheels; that the whole sidewalk was three or four feet wide; the stains of blood were about ten feet from the steps . . . then continued to the front of the house and up over the steps; the marks were about in the middle of the sidewalk; the marks of automobile tires were on the concrete sidewalk; they were tire marks; that they were not single; the marks were on the sidewalk from the rear wheels of the truck and she saw them when she came out; the motor of the truck was in front of the house . . . the marks were in back of the front tires; it was in front of the rear tires; there was more than one spot of blood on the sidewalk; she didn't count the spots but they were ten feet from the steps, maybe less; the sidewalk in front of the house was concrete . . . where the blood spots were it was concrete, and the concrete is three or four feet wide at that point . . . the concrete comes up about two feet from the steps of the house; the tire marks she saw were about nine or ten feet; they may have been longer or shorter; that the tires went over the marks of the blood that were on the sidewalk; blood and dirt, yes; it was fresh blood."

The evidence already narrated warranted a finding that the mother of the plaintiff's intestate was his custodian at the time and exercised due care for his safety. She was attending to her household duties, but at the same time she was looking out for the safety of the child. He was left in the kitchen. The only door leading from that room to the street was locked. The two oldest children were in immediate charge. She was in a nearby room and solicitous for his welfare. The fact that without her knowledge he went upon the sidewalk does not show that she was careless as matter of law. *Sullivan* v. *Boston Elevated Railway*, 192 Mass. 37, 45. *Linnane* v. *Millman*, 261 Mass. 491, 494. *Brennan* v. *Boston Elevated Railway*, 261 Mass. 318, 319. *Herd* v. *Boston Elevated Railway*, 265 Mass. 125, 127. *DeFuria* v. *Mooney*, 280 Mass. 447, 449. *Shear* v. *Rogoff*, 288 Mass. 357, 360, 361. *Faircloth* v. *Framingham Waste Material Co.* 286 Mass. 320, 323. *Gallagher* v. *Johnson*, 237 Mass. 455. *Rondeau* v. *Kay*, 282 Mass. 452, 455,

*Howlett* v. *Dorchester Trust Co.* 256 Mass. 544, 547. *Stachowicz* v. *Matera,* 257 Mass. 283. *Ayers* v. *Ratshesky,* 213 Mass. 589. The case at bar on this point is distinguishable from cases like *McKenna* v. *Andreassi,* 292 Mass. 213, 220.

It cannot be said as matter of law that the plaintiff's intestate was incapable of exercising care for his own safety. He was intelligent, alert, healthy, and in the habit of being with many children. *Collins* v. *South Boston Railroad,* 142 Mass. 301, 313, 314. *Stacy* v. *Dorchester Awning Co. Inc.* 290 Mass. 356. *McDonough* v. *Vozzela,* 247 Mass. 552, 556. *Camardo* v. *New York State Railways,* 247 N. Y. 111. As the deceased was capable of exercising care for his own safety, "the presumption was that he was careful and the burden was on the defendant to show the contrary." *Brennan* v. *Boston Elevated Railway,* 261 Mass. 318, 320. *DeFuria* v. *Mooney,* 280 Mass. 447, 449. It, could not have been ruled as matter of law that the deceased was negligent. "Whatever his capacity of exercising care for his safety . . . he was entitled, under G. L. (Ter. Ed.) c. 231, § 85 . . . to the benefit of the presumption that he exercised the care to be expected of a child of his age under like conditions." *DeFuria* v. *Mooney,* 280 Mass. 447, 449. There is nothing at variance with this in *Sullivan* v. *Chadwick,* 236 Mass. 130, 134, and *Franca* v. *Rubin,* 268 Mass. 590, 593, where the circumstances were different.

Although the question is somewhat close, we think that there was evidence to support a finding that the defendant was negligent in the operation of the automobile, assuming that it was legally registered. The defendant, as he was about to start his truck, knew from seeing the little hands on the tailboard of his truck that a child was dangerously near. He knew that children were attracted to his ice truck. The jury may have concluded that under those conditions no prudent operator would start his truck without investigation as to the safety of the child. It would have been simple for the defendant to move over in his cab so as to be able to see the right side of his truck, or to jump out and look at the rear of his truck, or even to wait a brief time before starting. There was no evidence that he

blew his horn. The testimony as to the blood spots on the sidewalk and the marks of the wheels of the truck with reference to those spots, if believed, tended to throw doubt upon the version of the events as given by the defendant. It might have been inferred from that testimony that the defendant drove his truck on the sidewalk where, in all the circumstances, he could not rightfully drive without exercising extraordinary care for children, and that, by reason of that conduct, he ran over the child. *Brown* v. *Daley,* 273 Mass. 432, 436. It was not necessary for the plaintiff to prove precisely how the accident happened. The case at bar on this point falls within the authority of decisions like *Dowd* v. *Tighe,* 209 Mass. 464, *Tenney* v. *Reed,* 262 Mass. 335, 338, *Minsk* v. *Pitaro,* 284 Mass. 109, 112, and *Eaton* v. *S. S. Pierce Co.* 288 Mass. 323. It is distinguishable from cases like *Foley* v. *Osgood,* 293 Mass. 280, *Jabbour* v. *Central Construction Co.* 238 Mass. 453, *Whalen* v. *Mutrie,* 247 Mass. 316, *Rizzittelli* v. *Vestine,* 246 Mass. 391, *Boyd* v. *Mills,* 278 Mass. 132, and *Maffioli* v. *Geo. L. Griffin & Son, Inc.* 289 Mass. 488.

The defendant presented forty-eight requests for rulings and excepted to the refusal of the court to grant those numbered 1 to 45, inclusive. In that connection the trial judge at the close of the charge asked counsel for the defendant if he desired to call the attention of the court "to any special ones of his forty-five requests, to which defendant's counsel replied that he did not desire to call special attention to any particular one of the forty-five requests." The trial judge was well within his right in asking that particular requests claimed not to have been adequately covered by the charge be called to his attention. The course pursued by the defendant was irregular. In view of the great number of requests presented, it was the duty of the defendant in response to the question of the trial judge to specify the requests for rulings thought not to be fairly covered by the charge. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 382. *Herrick* v. *Waitt,* 224 Mass. 415, 417. *Henderson* v. *Raymond Syndicate,* 183 Mass. 443, 446. *Pendleton* v. *Boston Elevated Railway,* 266 Mass.

214, 219. While the instructions as to the care required
of the mother as custodian of the child might have been
somewhat amplified, the subject was covered in the charge
in such a way that the jury cannot be thought to have been
misled. No exception was taken to the instruction as given
on this point. It is not necessary to deal further with the
requests for instructions. The number of such requests
was disproportionately large in view of the issues involved.

Exceptions to the charge as given remain for consideration.

Exception was taken to the statement in the charge that
"This child according to the evidence given here was a
bright, active, smart child. There is no evidence appar-
ently that has been introduced here that would give you
any other picture in the characterization of the child."
This was nothing more than stating the testimony of the
mother. *Commonwealth* v. *Horsfal*, 213 Mass. 232. *Sawyer*
v. *Worcester Consolidated Street Railway*, 231 Mass. 215,
218. Her testimony was not contradicted. Her anxiety
as to care for him while on the street did not narrow the
description of him as narrated by the judge. There was no
evidence that he was unable to exercise care for himself.

No exception appears to have been taken to the instruc-
tions touching the presumption as to the due care of the
deceased. The instructions, however, were in accordance
with *Brennan* v. *Boston Elevated Railway*, 261 Mass. 318,
320, *DeFuria* v. *Mooney*, 280 Mass. 447, 449, and *Stacy* v.
*Dorchester Awning Co. Inc.* 290 Mass. 356, 360.

It was stated in the auditor's report that the agency of
the defendant to operate the automobile and the ownership
of the automobile by his sister, Josephine Melchionno, were
admitted by both counsel. The automobile was registered
in the name of the sister. The defendant tried the case
on the theory that the automobile was bought and paid
for and owned by his sister, and therefore lawfully was
registered in her name. The testimony of these two wit-
nesses developed sharp inconsistencies with that theory.
That testimony need not be recited or analyzed. It is
enough to say that the jury would have been warranted
in disbelieving categorical testimony that the sister was

the owner and in finding that it was owned either by the defendant alone or by the defendant and his sister jointly. The statute required that a motor vehicle be registered in the name of the owner. G. L. (Ter. Ed.) c. 90, § 2. *Hanley* v. *American Railway Express Co.* 244 Mass. 248. If the defendant was the owner or a part owner, registration in the name of his sister did not protect him in the operation of the automobile on public ways. *Shufelt* v. *McCartin,* 235 Mass. 122, 125. *Balian* v. *Ogassin,* 277 Mass. 525, 533. *Roselli* v. *Riseman,* 280 Mass. 338. *Kilduff* v. *Boston Elevated Railway,* 247 Mass. 453, 456. Violation of a criminal statute in this respect is at least evidence of negligence. *Brown* v. *Alter,* 251 Mass. 223. *MacDonald* v. *Boston Elevated Railway,* 262 Mass. 475. *Di Franco* v. *West Boston Gas Co.* 262 Mass. 387, 389. *Pawloski* v. *Hess,* 253 Mass. 478. *Balian* v. *Ogassin,* 277 Mass. 525, 530. *La-Fucci* v. *Palladino,* 285 Mass. 240. *Caccavo* v. *Kearney,* 286 Mass. 480, 484.

As already pointed out, the evidence would have warranted a finding that the automobile was not legally registered. "It is settled that the operation of an unregistered automobile" on a highway in this Commonwealth "is unlawful, creates a nuisance thereon and makes the driver and assenting owner liable for all the direct injury resulting from such act, although such injury was not the result of an act of negligence." *Evans* v. *Rice,* 238 Mass. 318, 320, 321. *Gould* v. *Elder,* 219 Mass. 396. *Washburn* v. *Union Freight Railroad,* 247 Mass. 414, 416. *Fairbanks* v. *Kemp,* 226 Mass. 75, 79. *Koonovsky* v. *Quellette,* 226 Mass. 474, 478. *Pierce* v. *Hutchinson,* 241 Mass. 557, 564. *Di Franco* v. *West Boston Gas Co.* 262 Mass. 387, 389. *LaFucci* v. *Palladino,* 285 Mass. 240, 242, 243. *Globe Discount & Finance Corp.* v. *New Jersey Ins. Co.* 293 Mass. 267. There was no error in the instructions touching the subject of registration of the motor truck. They were in substantial conformity with the law as declared in the foregoing decisions.*

* In his main charge to the jury, the trial judge, after reviewing the testimony as to regulation and ownership of the truck, stated that, if it was not legally registered, it was an outlaw and a trespasser and the defendant "was negligent." The instructions to which the defendant saved an exception were

At the close of the evidence and subject to the exception of the defendant, two counts were added to the plaintiff's declaration by amendment. Although inartistically drawn, in substance those counts charged that the plaintiff's intestate sustained injuries from which he subsequently died and from which he endured mental anguish and conscious suffering by reason of the operation by the defendant upon a public highway of an unregistered automobile. These were counts 3 and 4. The true import of these counts is not affected by reference to the motor vehicle as an outlaw, trespasser and nuisance on the highway. Commonly, there would be no error in the allowance of such an amendment. G. L. (Ter. Ed.) c. 231, §§ 51, 138. *Herlihy* v. *Little,* 200 Mass. 284. *Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1. *Shapiro* v. *McCarthy,* 279 Mass. 425. Before the verdicts were recorded, the jury stated in reply to a question from the trial judge that they had found that the defendant was negligent. Verdicts were returned for the plaintiff for $3,986 on each of the death counts, count 1 alleging death to have been caused by negligence and count 3 alleging death to have been caused by operating an unregistered automobile, and for $561.80 on each of the counts for conscious suffering, count 2 being for negligence, and count 4 for operating an unregistered automobile. Of course, there can be judgment on only one count for death, and on only one count for conscious suffering. Counsel for plaintiff agreed before the jury retired that, if there was a finding for the plaintiff on

given following a colloquy between the judge and counsel after the charge, and were as follows: "Now, in this case, you will determine in whose name this truck was registered. If it was registered in the name of the sister of the defendant, if you find that she contracted for and purchased the truck and had an interest in it as an owner of the truck, the registration was proper provided she was the operator of the truck at the time of the accident. If you find that the truck was owned in part by the sister and in part by this defendant, and that it was registered in the sister's name as part owner, but was operated by other part owner, the defendant, then I will say the registration under our law requires the name of any part owner who usually operates the truck by himself or his agent, and it is not properly operated by the part owner in whose name it isn't registered. In this case the evidence is that it was registered in the sister's name and it was operated at the time of the accident by this defendant. This defendant was the driver, it was admitted on the stand here. There is no question that he operated it." — REPORTER.

counts 1 and 2, there need be no findings on counts 3 and 4. That agreement may stand as an election.

In view of the verdicts rendered and the agreement of the plaintiff to rely upon counts 1 and 2, it would seem that, in any event, the defendant has suffered no harm by the allowance of the amendment to the plaintiff's declaration and by the instructions given on the theory that the automobile might be found to be not legally registered.

It is not necessary to discuss the exceptions in further detail. They have all been examined with care, as have also the arguments of the defendant. No error is disclosed. The result is that the exceptions must be overruled.

## II.

### Petition to Establish the Truth of Exceptions.

The trial judge allowed the bill of exceptions, which has just been considered, but excepting from the bill as filed certain specified portions as not being conformable to the truth. The defendant caused to be printed and entered in this court the bill of exceptions as thus allowed. G. L. (Ter. Ed.) c. 231, § 135. He then filed in the full court under G. L. (Ter. Ed.) c. 231, § 117, a petition to establish the truth of the bill of exceptions as filed in the Superior Court before any portion was deleted by the trial judge. That petition was referred to a commissioner. He has filed a report. That report has been printed and in form is before us.

The plaintiff contends that the defendant cannot rightly ask the consideration of the bill of exceptions as allowed by the trial judge under G. L. (Ter. Ed.) c. 231, § 135, and also consideration of his petition under G. L. (Ter. Ed.) c. 231, § 117, to establish the truth of such alleged exceptions as were disallowed by the trial judge. He contends that the remedies for review (1) based upon a bill of exceptions under § 135, and (2) based upon a petition to establish the truth of exceptions under § 117, are alternative and inconsistent. He asks that, if the course of conduct of the defendant does not constitute an election between the two methods of procedure, he be now required to make an election.

When an excepting party proceeds under § 135, he accepts the propriety of the action of the trial judge and in effect admits that the case has become "ripe for final preparation and printing of the record for the full court," as stated in lines 35 and 36 of that section. *Thorndike, petitioner*, 250 Mass. 408. See *Barnett, petitioner*, 240 Mass. 228. It is manifest that, ordinarily, the public welfare and the rights of parties require that questions of law arising at a single trial ought to come before the full court by one record and ought not to be split into two or more separate proceedings. See *Weil* v. *Boston Elevated Railway*, 216 Mass. 545, 547–550. Correct practice has been directed to that end. *Harrington* v. *Boston Elevated Railway*, 229 Mass. 421, 431, 432. *John B. Frey Co. Inc.* v. *S. Silk, Inc.* 245 Mass. 534, 537. In *Moore* v. *Quirk*, 105 Mass. 49, 51, it was said that "according to the well settled practice, the excepting party, by arguing the exceptions allowed, waived his petition to establish the truth of different exceptions." That is a sound principle of practice. It is in accord with the implications of said §§ 117 and 135. However, because of a misapprehension, the petition in *Moore* v. *Quirk* was considered. Without establishing any precedent for the future, we think the present petition to establish exceptions may be considered in the peculiar circumstances here disclosed.

The report of the commissioner shows these facts: There was a pre-trial hearing before a judge of the Superior Court other than the trial judge. At the close of that hearing, that judge dictated a pre-trial report, which contained among other matter not here material these words: "Amendments: None." "Concessions or Admissions: The usual issues of due care and negligence in a collision between a truck and a boy in the street. See auditor's report." This pre-trial report was not attested or signed by anyone. The pre-trial report was then put with the papers in the case and was before the trial judge from the beginning of the jury trial. In the auditor's report is the statement that the "agency of Antonio Melchionno and the ownership of the automobile by Josephine Melchionno was admitted by both counsel." The commissioner further reported as

follows: "The plaintiff called the defendant as the first witness and examined him as to the actual ownership of the truck. The defendant objected to this line of examination and there were two conferences at the bench, after which testimony on this subject continued. I am unable to find that the defendant formally saved an exception to the ruling. Defendant's counsel asked leave to read the pre-trial report into the record, which was refused and exception saved by the defendant. After the close of the evidence and before argument there was a bench conference upon the plaintiff's motion to amend his declaration and upon the defendant's motion for a directed verdict. At this conference the defendant again moved that the pre-trial report be made part of the record, which was denied and exception saved by the defendant."

Thus it appears from the commissioner's report that only one exception was saved by the petitioner which was not included in the bill of exceptions as allowed by the trial judge. That exception was to the refusal by the trial judge to permit the petitioner "to read the pre-trial report into the record," and to the denial by the trial judge of the petitioner's motion "that the pre-trial report be made part of the record." These relate to the same matter and raise identical questions. There is no merit in that exception. The motion to amend the declaration requested leave to add two counts wherein the plaintiff sought to recover damages for the same death and conscious suffering charged in the two counts of the original declaration, and alleged that such death and conscious suffering were caused by the defendant through the operation by him on a public way of a motor vehicle not properly registered according to law and hence an outlaw on the public way.

The pre-trial procedure is new in this Commonwealth. It is confined to Suffolk County. It is described at some length in *Fanciullo* v. *B. G. & S. Theatre Corp., post,* 44.* It may result in admissions or stipulations as to the

---

* The pre-trial procedure originated in an order of the Superior Court of June 20, 1935, effective September 3, 1935, relating to business in the county of Suffolk. It first was before this court on the question of an exercise of

course of the trial. Parties commonly would be bound thereby. There is nothing in this record to show the precise attitude of the judge to the pre-trial report. Nothing is set out in the commissioner's report concerning what was said at conferences at the bench when it was under discussion. No ruling of law was asked touching the force or effect of the pre-trial report. It does not appear among the docket entries. It was before the judge. It is a general principle as to the conduct of jury trials that the presiding judge may permit amendments of pleadings, may alter issues to be submitted to the jury, and may discharge or modify ordinary stipulations touching the course of the trial, in order to accomplish justice. *Luce* v. *Parsons*, 192 Mass. 8, 11. *Preston* v. *West's Beach Corp.* 195 Mass. 482, 495. *Dunbar* v. *Kronmuller*, 198 Mass. 521, 523. *Westfield Savings Bank* v. *Leahey*, 291 Mass. 473, 476. It is not unusual for this court to discharge a stipulation which appears to have been improvidently made. *Delano* v. *Smith*, 206 Mass. 365, 372. *Kennedy* v. *Drake*, 225 Mass. 303. *Mann* v. *United Motor Boston Co.* 226 Mass. 495. The present record is devoid of any circumstances showing the grounds for the use of the report of the pre-trial hearing. It seems to have been offered as a piece of evi-

---

discretion by a judge presiding in a pre-trial session as reported in *Stoneham Trust Co.* v. *Aronson*, 296 Mass. 154. On April 9, 1938, the Superior Court established the procedure by a rule, as follows:

### RULE 57A

#### (Applicable to civil cases at law.)

A justice specially assigned therefor may establish a pre-trial list of cases and request parties or direct their attorneys to attend a call of said list, at which call continuances, non-suits or defaults may be entered and also the following matters may be considered:

(1) simplification of issues;
(2) amendments of pleadings;
(3) stipulations of parties, admissions of facts or as to documents, records, photographs, plans and like matters which will dispense with formal proof thereof;
(4) limitation of the number of expert witnesses;
(5) reference to auditor;
(6) possibility of settlement, and
(7) such other matters as will aid in the disposal of the case.

Upon consideration of the above matters the justice shall make an appropriate order which will control the subsequent conduct of the case unless modified at the trial to prevent manifest injustice. — REPORTER.

dence. No inducing reasons for reading it into the record appear to have been stated. There is not enough in the record to establish its competency. The trial judge may have modified the course of the trial so that the pre-trial report had no bearing upon the issues. Whether the pre-trial report is evidentiary in nature need not be decided. The allowance of the amendment to the declaration and the admission of evidence tending to show that the motor vehicle was not legally registered gave a new complexion to the issues to be determined. It is evident, from the action of the trial judge, that he did not regard the statements in the pre-trial report as inexorably binding upon the actual conduct of the trial. At most, the pre-trial hearing amounted to a stipulation as to the issues to be tried before the jury. The declaration at that time contained only two counts, both based on negligence. On that declaration the burden was on the plaintiff to prove actual negligence of the defendant. If, however, the jury should find that the sister of the defendant was not the sole owner of the automobile but that it was owned by the defendant alone or by the two as joint owners, then it was not legally registered and the defendant in operating it on the highway was violating the law, which would be evidence of negligence on his part. The legality of the registration of the motor vehicle was a matter open under the amendment to the declaration. Whether it may have been open without the amendment need not be determined.

The result is that, on the report of the commissioner, no exception is shown to any ruling which as matter of law adversely affected the rights of the petitioner.

*Exceptions overruled.*

*Petition to establish truth of exceptions dismissed.*