ISRAEL T. GURMAN *vs.* STOWE-WOODWARD, INC.

Suffolk.     January 4, 1939. — March 1, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & COX, JJ.

*Practice, Civil,* Pre-trial report. *Contract,* What constitutes. *Corporation,* Corporate action, Officers and agents. *Agency,* Scope of authority. *Words,* "Agreement."

The word "agreement," as used in a portion of a pre-trial report entitled "Concessions or Admissions" in an action upon an alleged contract of employment of the plaintiff by a corporate defendant, was construed to mean "contract," and statements in the report that an "agreement" was made "between the parties" and of different contentions of the parties as to its terms and acts of the parties under it relieved the plaintiff of the burden of proving at the trial the authority of one who purported to make or to ratify the agreement on behalf of the defendant.

CONTRACT.     Writ in the Superior Court dated November 30, 1932.

The action was tried before *M. Morton*, J., and a verdict returned for the plaintiff in the sum of $8,929.70, of which the plaintiff remitted all in excess of $4,047.70. The defendant alleged exceptions.

*F. H. Stewart*, (*F. X. Daly* with him,) for the defendant.

*M. T. Silverstein*, (*J. C. Hogan* with him,) for the plaintiff.

Cox, J. The jury returned a verdict for the plaintiff in this action of contract to recover damages for breach of an alleged contract of employment. The writ describes the defendant as a corporation. The defendant's exceptions are to the denial of its motion for a directed verdict; to the refusal of the trial judge to instruct the jury that, "5. The burden is on the plaintiff to show not only that the contract alleged was within the corporate powers of the defendant, but also that it was either made or ratified by an officer or officers having authority to bind the corporation. 6. The president or other executive officer of a corporation has no authority as such to make a contract that one should remain in the corporate employ for life even under a general power to appoint, remove and fix the compensation of employees, and such authority cannot be implied"; and to the action of the trial judge directing the defendant's counsel to refrain in final argument from referring to "the necessity for, and to the lack of authority or ratification, to bind the defendant by such a contract as claimed."

The defendant states in its brief that "The precise issues raised by this appeal [*sic*] are these, viz.: 1. The pretrial report did not eliminate the issue of corporate authority or ratification. 2. Defendant was seriously prejudiced by being denied the right to argue the issue of corporate authority or ratification to the jury."

The "body" of a pre-trial report of the case which was "on file" is printed in full in the record. It appears therein that both parties were represented by counsel. Under the heading "Concessions or Admissions" appears: "On July 13, 1932 an agreement for employment was made between the parties. The plaintiff claims that the agree-

ment was entirely oral. The defendant claims that a
written memorandum of the full terms of the employment
agreement was drawn up and each party kept a copy. This
memorandum was not signed by the parties. The com-
pensation provided in this agreement was as set forth in
the declaration. The plaintiff claims that the agreement
was to employ the plaintiff permanently. The defendant
claims that their employment agreement was for an in-
definite period and could be terminated at the will of either
party. The defendant did terminate the contract on
August 31, 1932. Since that date the defendant has declined
to employ him. The plaintiff was paid for the period ending
August 31st and no payment has been made for any period
after that date." Under the heading "Remarks" appears:
"The defendant further relies on the amendment to the
answer that there was just cause for terminating the agree-
ment even though it was a permanent agreement, as the
plaintiff claims. On July 11, 1932 the plaintiff assigned to
the defendant a then pending application for letters patent
on a 'paintless golf ball'. The defendant denies that this
assignment was in consideration of the employment agree-
ment or that the plaintiff abandoned or agreed to abandon
any business of his own in reliance upon the employment
agreement." On the same day that the pre-trial report
was made, October 8, 1936, the defendant was allowed to
amend its answer, which was one of general denial and a
plea of payment, by adding thereto "that if it should appear
that any such contract or arrangement as alleged by the
plaintiff was entered into between the plaintiff and the
defendant, which the defendant denies, the plaintiff was
rightfully discharged by the defendant for incompetence
and disobedience."

The defendant does not contend that it is not bound by
whatever concession or agreement may have been made
by its counsel at the pre-trial call. It concedes that the
pre-trial procedure provides for the possible elimination or
narrowing of issues by some "stipulation or some admis-
sion" regarding them. See *Fanciullo* v. *B. G. & S. Theatre
Corp.* 297 Mass. 44; *Capano* v. *Melchionno*, 297 Mass. 1,

14–16; *Eckstein* v. *Scoffi*, 299 Mass. 573, 576; *Finegan* v. *Prudential Ins. Co.* 300 Mass. 147, 148; *Silver* v. *Cushner*, 300 Mass. 583, 585; *R. Dunkel, Inc.* v. *V. Barletta Co.*, *ante*, 7, 9. See now Rule 57A of the Superior Court (1932) adopted April 9, 1938. The precise contention of the defendant, worded somewhat differently, but nevertheless to the same effect, is stated to be that "the parties did not agree to narrow or eliminate the vital issue of corporate authority or ratification raised by the defendant's general denial. *The claim of the defendant was that another and quite different contract was made* [italics ours]. The plaintiff continued to have the burden of proof to show authority to make the contract *which he alleges was made*, or prove ratification of it. In no sense was there any stipulation or agreement that narrowed or eliminated that issue."

It is obvious that the question raised must be answered by a determination of the force and effect of the language contained in that part of the pre-trial report entitled "Concessions or Admissions." It is proper to consider the circumstances under which the pre-trial report was made. Adversary counsel, representing their clients, were before a judge of the Superior Court for the purpose, if possible, among other things, of providing for the elimination or narrowing of issues by some stipulation or admission regarding them. The defendant's attorney could not be required to surrender any substantive rights of his client, but if, as such attorney, he made some stipulation or admission as to the existence or nonexistence of facts or as to issues involved or not involved in the case, the client should be bound by these stipulations or admissions made in its behalf or against its interest, unless some reason is disclosed why it should not. *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207, 217. *Fanciullo* v. *B. G. & S. Theatre Corp.* 297 Mass. 44, 51. Although it is a general principle as to the conduct of jury trials that the presiding judge may alter issues to be submitted to the jury and discharge or modify ordinary stipulations touching the course of the trial, in order to accomplish justice, *Capano* v. *Melchionno*, 297 Mass. 1, 15, and cases cited, nevertheless the

necessity for the exercise of this authority by the trial judge before a stipulation may be discharged emphasizes the seriousness attendant upon the making of an admission or the entering into stipulations.

No argument has been addressed to us as to the meaning of the word "agreement" appearing in the "Concessions or Admissions." The defendant has not suggested that the word was used in any popular sense. In point of fact it concedes that "another and quite different contract" was made from that which the plaintiff relied upon. In the leading case of *Packard* v. *Richardson*, 17 Mass. 122, there is an extended discussion of the meaning of this word "agreement." It is said that in a popular sense it is frequently used as declaring the engagement of one only, but that it also is used in a technical sense importing a mutual act of two parties. In *Marcy* v. *Marcy*, 9 Allen, 8, it was said, by Chief Justice Bigelow, at page 10, in discussing the meaning of the word "agreement," in the statute providing that no action shall be brought upon an agreement that is not to be performed within one year from the making thereof, that, "In the absence of any explanatory or qualifying words, it must be interpreted according to the common and approved usage of the language, unless it has some peculiar and appropriate meaning in the law. . . . In whichever sense it is understood — whether it is to be interpreted as signifying a mutual contract, and as intended to include the stipulations of both parties, *which is its strict legal meaning*, [italics ours] . . . or as a promise or undertaking by one party only, of a purely unilateral character," the requirement of the statute is that it is to be in writing. Compare *Cunniff* v. *McDonnell*, 196 Mass. 7; *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469; see *Sage* v. *Wilcox*, 6 Conn. 81, 85–87; *Smith* v. *Ide*, 3 Vt. 290; *Wain* v. *Warlters*, 5 East, 10, 16.

In what sense was the word "agreement" used by the parties and by the judge in the case at bar? An "agreement for employment was made between the parties," and "The compensation provided in this agreement was as set forth in the declaration." "The plaintiff claims that the

agreement was entirely oral.   The defendant claims that
a written memorandum of the full terms of the employ-
ment agreement was drawn up and each party kept a
copy.   This memorandum was not signed by the parties.
. . . The plaintiff claims that the agreement was to em-
ploy the plaintiff permanently.   The defendant claims that
their employment agreement was for an indefinite period and
could be terminated at the will of either party.   The de-
fendant did terminate the *contract* [italics ours] on August
31, 1932.   Since that time the defendant has declined
to employ him.   The plaintiff was paid for the period
ending August 31st and no payment has been made for
any period after that date."   Could this mean anything
else to the judge and the experienced counsel in the case
than that the parties had made a contract for employment
of the plaintiff by the defendant at a specified compensa-
tion, and that the only issue between the parties on this
branch of the case was as to the terms of the contract of
employment?   It is true that the judge in the report safe-
guarded a further issue when, under the heading "Re-
marks," it is stated that "The defendant further relies on
the amendment to the answer that there was just cause
for terminating the agreement even though it was a per-
manent agreement, as the plaintiff claims."   It is also true
that the bill of exceptions recites interviews between the
plaintiff and the treasurer, president, and another officer of
the defendant, relative to the matter of employment and
that the evidence was conflicting as to the terms of the
employment, but nowhere is there any suggestion that the
officers of the defendant who employed the plaintiff were
acting without authority to do so.   It is also true, as con-
tended by the defendant, that the burden was on the plain-
tiff to show that the contract alleged was either made or
ratified by an officer or officers having authority to bind
the corporation.   *James F. Monaghan Inc.* v. *M. Lowen-
stein & Sons Inc.* 290 Mass. 331, 333.   But this burden
was disposed of favorably to the plaintiff by the concession
or admission that an agreement for employment was made
"between the parties."   That this agreement between the

parties amounted to a contract is emphasized by the further statement in the pre-trial report of the admission that the defendant terminated "the contract" on August 31, 1932. The attorneys must be credited with having had in mind at the time of the pre-trial call that the defendant in making a contract must, of necessity, act through its agents or officers, that if a contract was made between the "parties," one of which was the defendant, the authority of the latter's agents or officers to make the contract was an essential factor, and that the question of the existence or lack of existence of authority was foreclosed by a concession or admission that a contract was made "between the parties." Compare *Kidney* v. *Stoddard,* 7 Met. 252, 255–256. *Potts* v. *Chapin,* 133 Mass. 276, 282.

The attorneys for the defendant at the pre-trial call were not required to concede anything. It is not unreasonable to hope, however, that in the coöperative effort on the part of the Superior Court and bar to simplify and expedite the trial of cases, counsel will be disposed to agree as to matters concerning which there is no real controversy. The primary duty of any court is to see that justice is done, and if it should appear at the trial of any case that justice requires the discharge of stipulations or admissions which appear to have been improvidently made, or for the purpose of accomplishing justice, it is to be expected that the trial court will act in order to accomplish that end. *Capano* v. *Melchionno,* 297 Mass. 1, 15, and cases cited.

The pre-trial report in the case at bar appears to have been carefully drawn. It was put in writing and signed by the presiding judge. It was "on file" in the case. It is a part of the record that is before us. It contains the statement of a concession or admission that the "parties" made an agreement for employment. This agreement is therein referred to as "the contract." Nowhere is there a suggestion or intimation of any question of the lack of authority of anyone acting in behalf of the defendant to make the agreement. The terms of the agreement were in dispute, but nowhere in the report is there any qualification of the admitted fact that the parties made an agreement.

The only argument of the defendant that its motion for a directed verdict should have been allowed is that the record fails to disclose any evidence of corporate authority to make the agreement that the plaintiff alleges he made with the defendant or of any ratification of it, and that the pre-trial report did not eliminate this issue. This argument is disposed of by what has already been said. It also follows from what has been said that there was no error in the refusal of the trial judge to give the defendant's requests for rulings and in his refusal to permit the defendant's counsel to argue the question of lack of authority or ratification. We cannot agree with the contention of the defendant that the trial judge did not consider the pre-trial report as an admission by the defendant, for the reason that he stated that the question of authorization or ratification could not be raised by the defendant because "it was not raised in a pre-trial report on file." We think it is evident that the trial judge regarded that question as foreclosed by the report.

*Exceptions overruled.*