ALEXANDER B. ARMSTRONG *vs*. E. D. STAIR & others.

Suffolk.    December 11, 1913. — May 21, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Boston.    Special Police Officer.    Police.    Assault.    False Imprisonment.
Malicious Prosecution.    Agency.*

A person conducting a place of amusement, who employs and pays a special police
officer of the city of Boston appointed on his application under St. 1898, c. 282,
§ 2, is by the terms of the act "liable for the official misconduct of the officer
appointed on such application, as for the torts of any servant or agent in the
employ of such . . . person."

The proprietor of a theatre is liable to the purchaser of a ticket properly attending
a performance therein, who unlawfully was ejected, assaulted and wrongfully
imprisoned by a special police officer of the city of Boston appointed under
St. 1898, c. 282, §§ 2, 3, on the application of such proprietor and employed and
paid by him.

*Whether* it is within the scope of the employment of a special police officer of the
city of Boston, appointed on the application of the proprietor of a theatre
under St. 1898, c. 282, §§ 2, 3, and employed by such proprietor, to institute a
criminal prosecution of a person wrongfully removed by him from the theatre,
so as to make his employer liable for his acts in an action for malicious prose-
cution, here was not passed upon, there being evidence of assault and false
imprisonment to support the verdict in question.

TORT for alleged assault, false imprisonment and malicious
prosecution, the declaration containing counts respectively alleg-
ing each of these causes of action. Writ in the Municipal Court
of the City of Boston dated January 26, 1912.

On appeal to the Superior Court the case was tried before
*Lawton*, J. At the close of the evidence, which is described in
the opinion, the defendants asked the judge to rule that on all the
evidence the plaintiff was not entitled to recover. The judge
refused to make this ruling and submitted the case to the jury,
who returned a verdict for the plaintiff in the sum of $1,000. The
defendants alleged exceptions.

The case was submitted on briefs.

*J. A. Brackett,* for the defendants.

*T. J. Boynton & W. P. Dyer,* for the plaintiff.

DE COURCY, J. There was evidence tending to prove the

following facts: On the evening of November 3, 1911, the plaintiff purchased a ticket entitling him to a seat in the first balcony of the theatre controlled by the defendants. The usher to whom he handed the seat check left him standing in the aisle and attended to other patrons. When the curtain was raised the plaintiff took possession of the last seat in the last row, — the ticket for which was not sold for the evening's performance. Later the usher demanded the plaintiff's check, and notwithstanding the latter's explanation of its absence, he brought the special officer Williams. Again the plaintiff accounted for his failure to have his seat check, and asked that the manager be sent for. Williams put "twisters" on the plaintiff's wrists, forcibly removed him from the seat, took him from the theatre, and to a patrol box; from which place he was taken in a wagon to the police station and there detained until the following day. A complaint for disturbing a public assembly was made against him by Williams, but after a trial in the criminal court he was found not guilty and discharged. It appeared that as the plaintiff was being taken through the theatre lobby he saw the defendant Magee standing in the ticket office, and asked to be taken to him. One of the defendants testified that Williams was in their employ, that he was appointed a special officer on their application, was on duty in the theatre at all performances, and was paid his salary by them. It also appeared that the ushers were instructed by the defendants that whenever a person without a seat coupon was occupying a seat and refused to vacate it, the usher was to go to the officer and have the person removed.

Williams was appointed a special police officer by the police commission of the city of Boston under the provisions of St. 1898, c. 282. The material portions of that act are as follows:

"Section 2. Said board may, if it deems it expedient, on the application of any corporation or person that said board may deem responsible, appoint special police officers to serve without pay from said city, and the corporation or person applying for an appointment under this section shall be liable for the official misconduct of the officer appointed on such application, as for the torts of any servant or agent in the employ of such corporation or person.

"Section 3. Every special police officer appointed under

the provisions of this act shall serve from the time of his appointment to the first day of April of the year next ensuing, and shall have the power of police officers to preserve order and to enforce the laws and ordinances of the city in and about any park, public ground, place of amusement, place of public worship, wharf, manufactory or other locality specified in the application. A record of all such appointments shall be kept in the office of said board, and any appointment so made may be revoked by said board at any time."

The general common law rule is that for the acts of a special police officer in apprehending or punishing a wrongdoer for an injury done to the public at large, where he represents the public and not his employers, the latter are not responsible unless they actively direct his movements. See cases collected in notes, 6 Ann. Cas. 252; 23 L. R. A. (N. S.) 289; 39 L. R. A. (N. S.) 122.

But this statute by its express terms made the defendants liable for the official misconduct of Williams, as for the torts of any servant or agent in their employ. The Legislature did not attempt to make the employers responsible for the legally authorized acts of a special police officer; but where his appointment is made at their request, and for the purpose of enabling him to make arrests in connection with his duty of protecting their property and interests, it was deemed proper that they should be made legally responsible when he used that official power wrongfully, in their interest. There was ample evidence in this case that Williams, while acting by virtue of his official appointment, was guilty of unjustifiable and unlawful behavior in arresting and assaulting the plaintiff. And this official misconduct was committed while he was removing the plaintiff from his seat in the theatre, in pursuance of the general orders of the defendants.

Whether the instituting of a criminal prosecution was also within the scope of his employment need not be decided, as the only question raised by the general ruling requested is whether there was evidence to warrant a verdict for the plaintiff on any of the causes of action alleged in his declaration. *Pelton* v. *Nichols*, 180 Mass. 245. *Horgan* v. *Boston Elevated Railway*, 208 Mass. 287.

The case of *Healey* v. *Lothrop*, 171 Mass. 263, relied on by the

defendants, arose under St. 1878, c. 244, § 6, which was ex-
pressly repealed by St. 1898, c. 282, § 4. The statute of 1878
did not provide, as the present statute does, that the persons ap-
plying for the appointment of the officer should be liable for his
official misconduct. It is true that the earlier statute required
the applicant to give a bond to the city treasurer, containing a
provision as to liability for official misconduct; but the action
in *Healey* v. *Lothrop* was not brought upon the bond.

*Exceptions overruled.*