ANTHONY FANCIULLO *vs.* B. G. & S. THEATRE CORPORATION.

Suffolk.    January 4, 1937. — March 29, 1937.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Agency*, Scope of authority. *Theatre. Practice, Civil*, Waiver, Pre-trial hearing.

Evidence warranted a finding that an usher in a moving picture theatre was acting within the scope of his authority when he committed an assault and battery upon a patron while ejecting him for the ostensible purpose of preserving order.

A contention, raised for the first time at the argument before this court of exceptions of the defendant in an action of tort for assault and battery against a corporation, that the declaration was not sufficient because it did not name the particular employee of the defendant who committed the assault and battery, came too late.

Statement by RUGG, C.J., respecting pre-trial procedure.

It was proper for the jury to consider and give weight to a report of the judge presiding at a pre-trial hearing, read to them by the trial judge without objection but not introduced in evidence, and containing concessions by one of the parties bearing on a substantial issue in the case.

TORT. Writ in the Superior Court dated February 27, 1932.

The action was tried before *Goldberg*, J. There was a

verdict for the plaintiff in the sum of $7,500. The defendant, alleged exceptions.

*E. M. Dangel,* (*G. A. Goldstein* with him,) for the defendant.

*H. J. Goldberg,* (*M. Palais* with him,) for the plaintiff.

RUGG, C.J.  This is an action of tort to recover compensation for personal injuries alleged to have been sustained by the plaintiff by reason of an assault and battery committed on him by an agent or servant of the defendant. The evidence in its aspect most favorable to the plaintiff warranted a finding of these facts: The plaintiff, a boy eight years old, with several other boys bought tickets of admission to the defendant's moving picture theatre. The plaintiff and the other boys dropped their tickets in a box in the outer lobby, which was in charge of one O'Neil, the ticket taker and special police officer, and were shown to seats by the usher, one Less.  There was "some noise and disturbance in the theatre, in the row behind where the plaintiff and his companions were sitting, in which the plaintiff did not take part, and then immediately the usher, Harry Less, forcibly removed the plaintiff from his seat, ejected him from the theatre and pushed and threw him onto the floor in the outer lobby, causing personal injuries to him.  O'Neil, the special officer, was standing in the front lobby near the ticket booth.  After the plaintiff got up, he and the other boys left the premises." They saw and passed O'Neil but said nothing to him.  The usher, called as a witness by the plaintiff, testified that his duties were laid down by the defendant's manager, who told him that he "was just to usher people to their seats, to caution them once if they made noise, and if they didn't behave to notify the special police officer and if the special police officer couldn't do anything" to get a regular police officer. O'Neil, who was the only special police officer, testified that a part of his duties was to eject disorderly people from the theatre, if called upon; that the Saturday afternoon when the assault was said to have taken place was a very busy time and frequently it was necessary to rope off the lobby when people were waiting.  Both the usher and O'Neil

testified that they never saw the plaintiff and that no assault took place.

The defendant filed a motion for a directed verdict and three requests for rulings in different forms of words to the effect that the plaintiff had failed to prove that it was within the scope of the authority of the usher to eject the plaintiff from the theatre. All these were denied, subject to exceptions by the defendant. The defendant also requested a ruling to the effect that the burden "was on the plaintiff to prove that the usher in ejecting the plaintiff from the theatre, was acting within the scope of his authority and that the same was a part of his duties as usher." While this request was not given in terms, its subject was fully covered by the charge to the jury in words to which no exception was taken.

The main contention of the defendant is that there was not sufficient evidence to support a finding that the assault on the plaintiff by the usher was committed while acting within the scope of his employment by the defendant.

The usher was in the employ of the defendant. The assault upon the plaintiff by the usher was committed on the premises of the defendant while the usher was engaged in his work. The usher as an employee of the defendant had duties in connection with the preservation of order in the theatre, because he was required to give warning once to patrons if they made noise, and, if then there was further disorder, to notify the special police officer; and finally, if necessary, to get a regular police officer. This course of duty, resting upon the usher as employee of the defendant, was progressively connected with the preservation of order. In a place of public amusement where large numbers of people are accustomed to gather, the maintenance of order may incidentally require the use of force. The testimony of the usher as to the duties of his employment was reasonably susceptible of the inference that, in the circumstances here disclosed, the defendant impliedly authorized him to use necessary force to eject a small boy who was creating a disturbance rather than to summon the special police officer. A master not infrequently may be liable for conduct

of a servant who uses means not intended or contemplated by the contract of employment. For example, the proprietors of a circus have been held liable for the act of an employee in throwing a brick in an attempt to drive away a crowd of boys who had gathered about the tent. *Robinson v. Doe,* 224 Mass. 319, 321. "The test of the liability of the master is, that the act of the servant is done in the course of doing the master's work, and for the purpose of accomplishing it. If so done it is the act of the master, and he is responsible 'whether the wrong done be occasioned by negligence, or by a wanton and reckless purpose to accomplish the master's business in an unlawful manner.'" *Levi v. Brooks,* 121 Mass. 501, 505. The rule is stated in Am. Law Inst. Restatement: Agency, § 245, in these words: "A master who authorizes a servant to perform acts which involve the use of force against persons or things, or which are of such a nature that they are not uncommonly accompanied by the use of force, is subject to liability for a trespass to such persons or things caused by the servant's unprivileged use of force exerted for the purpose of accomplishing a result within the scope of employment." The case at bar is within the principle declared and applied in numerous decisions. *Robinson v. Doe,* 224 Mass. 319. *Murphy v. Bay State Wine & Spirit Co.* 212 Mass. 285. *Grant v. Singer Manuf. Co.* 190 Mass. 489. *Zerngis v. H. P. Hood & Sons,* 255 Mass. 603. *Champion v. Shaw,* 258 Mass. 9. *Howe v. Newmarch,* 12 Allen, 49. *Armstrong v. Stair,* 217 Mass. 534. *Holmes v. Wakefield,* 12 Allen, 580. *Hewett v. Swift,* 3 Allen, 420. *Hankinson v. Lynn Gas & Electric Co.* 175 Mass. 271. *Gray v. Boston & Maine Railroad,* 168 Mass. 20, 24. *Genga v. Director General of Railroads,* 243 Mass. 101, 104, 105, 106. *Ramsden v. Boston & Albany Railroad,* 104 Mass. 117. *McKeon v. New York, New Haven & Hartford Railroad,* 183 Mass. 271. *Paull v. Radlo,* 293 Mass. 521, 525. *Janvier v. Sweeney,* [1919] 2. K. B. 316, 325. *Son v. Hartford Ice Cream Co.* 102 Conn. 696. *Ploof v. Putnam,* 83 Vt. 252. The case at bar is distinguishable from the many cases where the master has been exonerated from liability for the act of

a servant not done in the course of his employment. *Douglas* v. *Holyoke Machine Co.* 233 Mass. 573. *Obertoni* v. *Boston & Maine Railroad*, 186 Mass. 481. *McCarthy* v. *Timmins*, 178 Mass. 378. *Stone* v. *Commonwealth Coal Co.* 259 Mass. 360. *Brown* v. *Jarvis Engineering Co.* 166 Mass. 75. *Brown* v. *Boston Ice Co.* 178 Mass. 108. *O'Rourke* v. *A–G Co. Inc.* 232 Mass. 129. *Fairbanks* v. *Boston Storage Warehouse Co.* 189 Mass. 419. *Driscoll* v. *Scanlon*, 165 Mass. 348. *Bowler* v. *O'Connell*, 162 Mass. 319. *Kowalczyk* v. *Murphy*, 295 Mass. 551, 555. *Harrington* v. *Boston & Maine Railroad*, 213 Mass. 338. *Muller* v. *Hillenbrand*, 227 N. Y. 448.

There is no merit in the contention of the defendant that the plaintiff's declaration was insufficient because it did not name the usher as the agent of the defendant who committed the assault. There was no request by the defendant for specifications. There was no demurrer, as in *McCann* v. *Tillinghast*, 140 Mass. 327. The case at bar is quite distinguishable from *Bacon* v. *Hooker*, 173 Mass. 554. The case has been fully tried without raising the point. It is too late to rely upon it now. Even if there were some merit in it, an amendment to the declaration could be allowed. *Pizer* v. *Hunt*, 253 Mass. 321.

The bill of exceptions contains this paragraph: "Throughout the trial the parties made conflicting contentions concerning the authority of the usher, Harry Less. At the trial there was presented to the trial justice a pre-trial report, so called, the original of which is on the files of this court, and which is incorporated herein by reference and which may be transmitted to the clerk of the Supreme Judicial Court together with the files for such use as the full court may see fit to make of the same. The judge in his charge to the jury, among other things, read the pre-trial report, a photostatic copy of which is hereto annexed, and submitted for the jury's determination the question whether the usher, Harry Less, was acting within the scope of his employment." The title of this paper is "Pre-Trial Report." It contains a description of the court, the name and number of the case, the names of the counsel,

and these further statements: "Amendments: None  Possibility of Settlement: None  Concessions or Admissions: In this case the plaintiff claims to have been a patron at the defendant's theatre, known as the Strand Theatre at Scollay Square. The defendant operated this theatre and ushers in its employ, with the usual duties of ushers at movie theatres, were in attendance and at work during the usual business hours. The claim is in behalf of the plaintiff that one of the ushers assaulted the plaintiff in the course of preserving order. The plaintiff claims that he did not participate in any disorder in the theatre. The defendant concedes that if the usher in the course of preserving order in the theatre assaulted the plaintiff, no question of agency is raised. The defendant denies that any assault took place. W. D. Gray."

The pre-trial report is something new in the procedure of this Commonwealth.* It appears to have been founded upon an order issued on June 20, 1935, by Judge Gray of the Superior Court to become effective on September 3, 1935. That order was confined in its operation to Suffolk County. It is not in form a rule of the Superior Court. It is an order respecting jury cases alone. It is designed to eliminate delays in the preparation and trial of such cases, to save the time of the court, members of the bar, jurors, parties and witnesses, and to accelerate the disposition of cases. The order was printed under the title "Notice to the Bar." The inference is that it was distributed among the trial lawyers of Suffolk County. It established the times for the pre-trial calls. It stated among other matters that at the pre-trial call the presiding judge will consider with counsel "(1) Whether the pleadings are in proper shape; (2) Whether the case is then ready for trial; (3) Whether the issues of the case may be simplified for trial, including also whether agreements may be made to avoid the bringing to court of unnecessary witnesses, whether the number of expert witnesses may be limited, and other simi-

---

* See footnote, *ante*, 14. — REPORTER.

lar preliminary matters; (4) Whether the case may be settled with or without the aid of the Presiding Justice. If there is reasonable likelihood that the parties may arrange a settlement, the case, with the permission of the court, may stand over to a later Pre-Trial call instead of passing immediately to the short list for trial." It contains also this paragraph: "It should be understood that in the event of failure of parties to appear or be properly represented at the Pre-Trial call the Court has the same power with respect to non-suits, defaults, or both as it has heretofore exercised when a case is reached for trial. The Court expects, however, that this power will be sparingly used, because the great benefits that have been enjoyed in other places where the Pre-Trial call has been in operation and which may reasonably be expected here, depend upon the fullest co-operation between the bench and bar, and with that co-operation the power to non-suit and default will be practically unnecessary."

The order contains no provision respecting a report by the judge presiding at the pre-trial session. There is such report in the case at bar, which has been described. The order contains no statement as to the force and effect to be given to the pre-trial call or to the pre-trial report. These matters must be determined according to general principles of procedure.

It is manifest from the comprehensive scope and careful preparation of the order of June 20, 1935, that its purpose was to effect genuine improvements in the disposition in Suffolk County of cases in which jury trial has been claimed. The character of the order is such that the inference would be natural that it was prepared or approved by several or all of the judges of that court. But no information is afforded us on this point. Its validity must rest upon the jurisdiction of the judge presiding when it was entered. The promulgation of this order was within the power of the judge having charge of the jury list. G. L. (Ter. Ed.) c. 212, § 2; c. 213, § 3; c. 231, § 71. Action by all the judges was not essential to its validity. The Superior Court is a judicial tribunal of superior and general

jurisdiction. Inherently it has wide power to do justice and to adopt procedure to that end. *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 170, 180. *McMahon* v. *O'Connor,* 137 Mass. 216, 217. *Ela* v. *Cockshott,* 119 Mass. 416, 418. In many connections the Superior Court "means the court held, whether by one or more judges, at a time and place established by law for the judicial administration of justice." *Catheron* v. *County of Suffolk,* 227 Mass. 598, 602.

The making of the pre-trial report was an appropriate function of the presiding judge. The pre-trial hearing may result in admissions or stipulations as to the elimination or narrowing of issues open under the pleadings. There is no reason why parties should not be bound thereby. *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207, 217. It is highly important that arrangements between the presiding judge and counsel, as to simplification of issues for trial and as to avoidance of bringing to court unnecessary witnesses, be put in writing in authoritative form for the guidance of the judge presiding over the jury trial.

It is to be observed that no objection was made to the reading of the pre-trial report by the trial judge to the jury. No exception was saved concerning it.* No instruc-

---

* Whatever question of law was before this court with respect to the pre-trial report seems to have been raised in the following circumstances: In the plaintiff's brief was the following passage:

"Although there was ample evidence at the trial to warrant the jury in finding that Harry Less was employed by defendant as an usher, and was on duty at the time of the assault on the plaintiff; that there was some disturbance in the defendant's theatre in which the plaintiff did not participate, and that the usher unjustifiably assaulted him, the plaintiff contends that under the pre-trial report the only fact which he was called upon to prove was that 'the usher in the course of preserving order assaulted the plaintiff.' The purpose of the pre-trial report is, of course, to establish the uncontroverted facts in the case, and the concession or admissions noted therein were made in the interest of expediting court business and are binding on the parties in the pending trial. It is well settled law that attorneys of litigants are empowered to make admissions of undisputed facts in a pending trial, and the courts have encouraged litigants, through their attorneys, to enter into such mutual concessions."

The defendant's brief contained the following:

"The requests of the defendant squarely brought to the court's attention the issue and extent of the scope of employment of the usher Less. The plaintiff may contend that this issue was foreclosed to the defendant because of the pre-trial report. The purpose and effect of a pre-trial report has not yet been determined by this court. It is not a judicial act in its true sense. The informality of the so-called 'hearing,' the appearance of the report and

tions were requested as to its force or effect, or the weight to be given it. No requests were presented for rulings of law concerning it. The record is bare of any information touching comments on it by the trial judge. It does not appear among the docket entries. The trial judge states that it is on the "files" of the court. See § 7 of General Rule as to the Records of the Supreme Judicial and the Superior Courts. Rules of the Supreme Judicial Court (1926), page 61. 252 Mass. 613. Its authenticity was not questioned.. Its terms were not disputed. It was simply read by the judge in the course of his charge. It was entitled to consideration by the jury. It might be given such weight as a document of that nature would commonly have. Its statement that the defendant "concedes that if the usher in the course of preserving order in the theatre assaulted the plaintiff, no question of agency is raised," bore directly upon the liability of the defendant.

The defendant objects now to the pre-trial report because it is not signed by the judge. His name appears to be typed. It relies upon *Fairbanks* v. *Beard*, 247 Mass. 8. It is too late to raise this point. The absence of signature did not invalidate the pre-trial report. *Volpe* v. *Sensatini*, 249 Mass. 132, 134.

The record discloses no prejudicial error.

*Exceptions overruled.*

---

particularly the signature lack the nicety of judicial action. . . . The entire trial was conducted, as the instructions to the jury show, upon the basis that the extent and scope of the employment of the usher Less was a 'live' issue."

Following the oral argument before this court, there was correspondence of counsel with the court on the subject. — REPORTER.