## 16978

J. REUBEN LONG, as Solicitor of the Twelfth Judicial Circuit, Respondent, v. CLAUDE R. McMILLAN, Chief Highway Commissioner of South Carolina, and TEE HUTTO, Captain of the South Carolina Highway Patrol, Appellants

(86 S. E. (2d) 477)

Messrs. *T. C. Callison, Attorney General,* and *James S. Verner, Assistant Attorney General,* of Columbia, *for Appellants,*

*J. Reuben Long, Esq., Solicitor,* of Conway, *for Respondents,*

*Messrs. T. C. Callison, Attorney General,* and *James S. Verner, Assistant Attorney General,* of Columbia, *for Appellants, in Reply,*

March 15, 1955.

TAYLOR, Justice.

Appellants, Claude R. McMillan and Tee Hutto, Chief Highway Commissioner and Captain of the South Carolina Highway Patrol, respectively, were found guilty of being in contempt of the General Sessions Court of Horry County on August 11, 1954, and each sentenced to serve six months on the public works of such county or pay a fine of $600.00.

Appellants were served on July 28, 1954, with a Notice, Affidavit, Petition, and Rule to Show Cause why they should not be adjudged in contempt of Court. The attached Rule appears as follows:

"To: Claude R. McMillan, Chief Highway Commissioner of South Carolina, and Tee Hutto, Captain of the South Carolina Highway Patrol:

"You are Hereby Directed to show cause before me on the 11th day of August, 1954, at 11:00 a. m., in the Courtroom of the Horry County Courthouse, Conway, South Carolina, or as soon thereafter as you may be directed to

appear, why you should not be adjudged in contempt of Court for the alleged willful violation of an Order of this Court arising out of the case of *The State v. Stacy Huggins* as is set forth in the verified petition accompanying this Order.

"The Sheriff of Horry County, or his lawful deputies, is herewith directed to make service of the copies of the Petition and Rule to Show Cause upon the Respondents.

"G. Badger Baker,

"Presiding Judge, Twelfth

"Judicial Circuit.

"At Chambers,
"Florence, S. C.
"July 28, 1954."

Cpl. R. W. Crawford of the South Carolina Highway Patrol, on January 30, 1954, arrested one Stacy Huggins, who, in an intoxicated condition, had, in the presence of Crawford, entered a service station in Horry County and fired three shots at one Gary Miller, using a .32 Caliber Smith and Wesson pistol, less than twenty inches in length and three pounds in weight. Cpl. Crawford disarmed the said Huggins and placed him in jail. Two warrants were issued the next day, one at the request of Cpl. Crawford, by Magistrate Bryant of Loris for Huggins. Crawford at that time had in his possession and continued to so keep the pistol until July.

Previously, on November 8, 1951, because of certain irregularities in the handling of firearms theretofore taken from persons arrested by a few members of the Highway Patrol, the following rule was adopted by the Highway Department:

"South Carolina
"State Highway Department
"Columbia
"November 8, 1951
"From: Captain, Highway Patrol
"To: All Lieutenants
"Subject: Seizure of Firearms

"Within the past few days there have been brought to my attention several cases of Patrolmen seizing from traffic violators unlawful or concealed Firearms and neither making proper charges against the violators nor accounting for the firearms through the proper authorities.

"Effective immediately, when any member of the Patrol seizes any piece of firearms being unlawfully carried, he will place the proper charge against the violator and surrender the seized firearms to the Magistrate, Recorder or Mayor before whom the case is brought, and a written receipt will be obtained and attached to daily report of the officer.

"Whenever it is necessary that any firearms or other property be removed from any motor vehicle for safekeeping, such property will be returned to the lawful owner as soon as possible and written receipt obtained from the owner.

                                        "Hutto".

The foregoing regulation was well known by both Lt. McClellan and Cpl. Crawford, but no daily report was made showing the seizure by Crawford of the Huggins' weapon until June 11th, neither was it surrendered to the Magistrate who had issued the arrest warrants.

The Grand Jury returned true bills on both indictments at the June Term of the General Sessions Court for Horry County, and Huggins, through agreement of counsel whereby he was to plead guilty as to one indictment, the other one being nol-prossed, plead guilty of violating Section 16-141, 1952 Code of Laws for South Carolina, which forbids the pointing of firearms at any person, and was sentenced

by the Honorable G. Badger Baker on June 11th, 1954, to pay a fine of $750.00 or serve one year in jail; the fine was paid and the other case was nol-prossed.

Respondent alleges on information and belief that some time after the imposition of the sentence, but on the same day, Cpl. Crawford went to the office of the presiding Judge in the Courthouse and discussed with him the disposition of the pistol and was verbally advised or ordered to keep the pistol until the further order of the Court. This conversation between Cpl. Crawford and Judge Baker took place in the Judge's Chambers and not in open Court, was not put into writing, or entered upon the records of the Court.

Honorable Frank A. Thompson, attorney of Conway, South Carolina, representing Huggins sought the return of the pistol after the trial and inquired of the Clerk of Court as to the whereabouts of the pistol and if it had been turned in to him. The Clerk of Court thereafter on June 11th, 1954, asked Cpl. Crawford about the pistol, who replied that he did not know whether he was going to turn the gun in or not. Thereafter, on the 16th of June, the Clerk of Court wrote Cpl. Crawford asking that the gun be turned in to him and disposed of in the regular manner but received no reply.

The first knowledge either Appellant had with regards to the situation was through a letter from Mr. Thompson to Mr. McMillan, dated June 29th, 1954. As a result of the Thompson letter, an investigation was made by a special investigator for the Highway Department, who reported his findings to Appellants on July 2nd, 1954. Lt. McClellan and Cpl. Crawford upon being interrogated stated that they knew of the Order of the Highway Department as to the disposition of firearms, dated November 8, 1951, and according to the testimony of the investigator and Appellant Hutto, admitted they had done wrong in not complying with this directive. Both Lieutenant McClellan and Corporal Crawford deny having admitted to any wrong.

Cpl. Crawford was relieved of his duties with the Highway Department for a period of fourteen days, demoted to the rank of patrolman, and transferred to another part of the State. Lt. McClellan, Crawford's immediate superior, was relieved of his duties for fourteen days, demoted to the rank of sergeant, and transferred to another section of the State.

On or about July 12th, 1954, the Appellant McMillan was called via long distance telephone by a citizen or citizens of Horry County, who said they were interested in the matter and wished to discuss with him what they considered to be the unjust treatment accorded McClellan and Crawford. As a result a meeting was arranged and held in Columbia with Mr. McMillan on July 21st, 1954. At this meeting, Mr. McMillan for the first time was shown a letter from Judge Baker to the foreman of the Grand Jury, dated July 10th, 1954, to the effect that Cpl. Crawford was instructed by him "to retain possession of this gun until he received a Court Order for its release." In the meantime, Judge Baker had written the following letter to Mr. McMillan on July 16th, 1954:

"Honorable Claude R. McMillan

"Chief Highway Commissioner

"Columbia, S. C.

"Dear Claude:

"At this year's June term of the Court of General Sessions for Horry County, a defendant by the name of Huggins was indicted for pointing firearms. He entered a plea of guilty and received a substantial fine. The person against whom the defendant directed the pointing of the firearm is corporal Crawford of the State Highway Patrol. Following the publication of the sentence in the Huggins case, the question came up as to the disposition of the weapon involved. I instructed Corporal Crawford to hold the weapon in his possession until the further order of the Court. Under this direction he retained custody of the weapon as an officer of the Court. No one made application to me for dis-

position of the gun, nor has any petition as yet been presented. Therefore, Corporal Crawford's possession of the gun had been the same as if in custody of the Court.

"I have received information, which at this time is pure hearsay, that Corporal Crawford has been suspended by the Captain of the Highway Patrol for retaining the gun in question and not turning it over to the Clerk of Court; and, further, that Lt. McClellan has also been suspended because of his knowledge of Corporal Crawford's possession of the gun and failing to take any steps toward having it turned over to the Clerk of Court. As stated, my information is hearsay, but inasmuch as these reports indicate the disciplining of two officers of the Highway Patrol for compliance with a Court order, it becomes necessary that I request you investigate this matter at your earliest convenience and let me have a report. If the facts substantiate the information that has come to me, I have no other alternative than to have Captain Hutto brought before me to show cause why he should not be adjudged in contempt of Court, and, if found in contempt, to be sentenced accordingly.

"You will understand that I do not have the slightest intention of attempting to enter into the operation of the Patrol Division of the South Carolina State Highway Department, but, on the other hand, as the Presiding Judge who passed sentence in the Huggins case, I cannot permit any obstruction or interference with any order passed in that case.

"With kind regards, I am

"Sincerely yours,

"(Sgd.) Badger,
"G. Badger Baker"

On July 19th, 1954, Mr. McMillan wrote Judge Baker by way of reply as follows:

"Honorable G. Badger Baker

"Florence, South Carolina

"Dear Badger:

"In connection with your letter of July 16th, concerning Patrolman R. W. Crawford I am sending you attached copies of the following papers:

"1. Captain Hutto's memorandum of November 8, 1951 to all Patrol Lieutenants concerning the accounting of firearms seized from law violators.

"2. Senator Frank A. Thompson's letter of June 29th, 1954, complaining of the action of Patrolman R. W. Crawford in withholding a pistol from a party, who turned out to be one Stacy Huggins.

"3. Copy of Horry County Clerk of Court F. G. Graham's letter of June 16th, 1954, to Patrolman Crawford requesting him to turn in a gun taken from Huggins.

"4. Copy of Special Investigator T. C. Hutchinson's report of July 2, 1954, concerning Senator Thompson's request.

"Captain Hutto's memorandum of November 8, 1951, was written on my instructions in an attempt to stop the practice by a few men of illegally handling seized firearms.

"On request for an accounting of the gun by the Clerk of Court and by his superior officers, Patrolman Crawford did not say that he had been ordered by you to retain possession of the gun. This information, and it was not in the form we usually associate with a court order, was not divulged until Mr. Crawford was up for disciplinary action.

"The action against Crawford was not in connection with the Huggins incident alone. His other activities were sufficient to cause action against him

"It has always been the policy of this Department to obey implicitly any Court order, but we cannot obey them if we do not have a copy and they are unknown to us.

"With kindest personal regards, I am

"Yours very truly,

"(Sgd.) Claude
"C. R. McMillan
"Chief Highway Commissioner.

The aforementioned conference and correspondence failed to bring about any change in the disciplinary action accorded Lt. McMillan and Cpl. Crawford, and the Rule to Show Cause why Appellants should not be adjudged in contempt of Court was served on July 28th, 1954. After a hearing in open Court, on August 11th, 1954, Appellants were found guilty of being in contempt of Court as charged in the Rule "For the alleged *willful violation of an Order of this Court arising out of the case of The State v. Stacy Huggins as set forth in the verified petition.*" (Emphasis ours.) We will therefore make inquiry as to whether or not there was a willful violation of an Order of the Court arising out of the case of The State v. Huggins. There being no written Order, it is contended that there was a valid oral one, the violation of which was willful and punishable by way of contempt proceedings.

There are two kinds of contempts of Court: That which is committed in open Court and that which is committed out of view and hearing of the Court. In the latter case, the offender must be allowed to offer evidence and argument in his defense, otherwise any judgment which the Court may pronounce will be absolutely void. Contempt of Court is a specific criminal offense; and a party charged therewith, though the proceeding is more or less summary in character, has the same inalienable right to be heard in his defense as he would against a charge of murder or any other crime. *McClatchy v. Superior Court of Sacramento County,* 119 Cal. 413, 51 P. 696, 39 L. R.

A. 691. See also. *Charles Cushman Co. v. Mackesy,* 135 Me. 490, 200 A. 505, 118 A. L. R. 148.

When Court is in session, any misbehavior in the presence of the Court constitutes a "direct contempt" of Court, *People v. Hadley,* 262 Ill. App. 444; but there can be no criminal or quasi criminal contempt unless there has been willful disobedience of an Order of the Court, *State ex rel. Nicomen Boom Co. v. North Shore Boom & Driving Co.,* 55 Wash. 1, 103 P. 426, 107 P. 196. Disobedience of a Court's lawful or valid Order, Judgment, or Decree is such interference with the administration of justice as to constitute "contempt," *Whitman v. Kentucky Central Life & Accident Insurance Co.,* 232 Ky. 173, 22 S. W. (2d) 593; but disobedience of a void Order, Judgment, or Decree, or one issued without jurisdiction of subject matter and parties litigant, is not "contempt," *State ex rel. Everette v. Petteway,* 131 Fla. 516, 179 So. 666. Contempts are either direct, such as are offered to the Court while sitting as such, and in its presence, or constructive, being offered not in its presence, but tending by their operation to obstruct and embarrass or prevent the due administration of justice. Every act which tends to frustrate the mandates of a Court of justice is a contempt of its authority; however, it can only issue in cases where the Court which issues it has awarded some process, given some judgment, made some legal Order, or done some act which the party against whom it issues, or other on whom it is binding, have either neglected to obey, contumaciously refused to submit to, incited others to defeat by artifice or force, or treated with terms of contumely and disrespect in the face of the Court. *Gandy v. State,* 13 Neb. 445, 14 N. W. 143, citing 27 Howell, St. Tr. 1019. *Stuart v. People,* 3 Scam. 395, 4 Ill. 395; *Hornsby v. Hornsby,* 187 S. C. 463, 198 S. E. 29.

No written Order having been issued, the following from 14 Am. Jur. 350. is apropos:

"Judicial records are not only necessary but indispensable, to the vitality of a court. The court hears arguments upon its records; it decides upon its records; it acts by its records; its openings and sessions and adjournments can be proved only by its records; its judgments can only be evidenced by its records—in other words, without its records it has no vitality. The acts of a court of record are known by its records alone and cannot be established by parol testimony. The court speaks only through its records, and this rule applies in case of a judge. Furthermore, the records of a court cannot be impugned upon matters within its jurisdiction, when offered in evidence, by counter evidence."

In the case of *In re Glenn*, 103 S. C. 501, 88 S. E. 294, 295, L. R. A. 1916-D, 1190, a contempt case in this State, we find this Court used the following language:

" 'Important as it is that courts should perform their grave public duties unimpeded and unprejudiced by illegitimate influences, there are other rights guaranteed to all citizens by our Constitution and form of government, either expressly or impliedly, which are fully as important, and which must be guarded with an equally jealous care.'

"The general rule is that, to constitute any publication a contempt, it must have reference to a matter then pending in court, * * * tending to the injury of pending proceedings upon it, and of the subsequent proceeding (citing cases)." See also *State ex rel. Kirven v. Scarborough*, 70 S. C. 288, 49 S. E. 860.

In another South Carolina case, *State v. Highsmith*, 105 S. C. 505, 90 S. E. 154, 155, an attorney for one of the litigants inquired of a Judge at Chambers his construction of a Court Order previously issued, and the Judge expressed himself orally relative thereto. Contempt proceedings were later instituted, and this Court said:

"As was suggested to counsel by a member of this court at the hearing, they erred in asking Judge Mauldin to construe his order unofficially, and he erred in doing so. The

proper practice would have been to move before him, for a judicial construction or a modification of it, as was permitted by its terms." Also of interest on the subject is *State v. Nathans,* 49 S. C. 199, 27 S. E. 52.

In the recent case of *Thompson v. Rutland,* S. C., 83 S. E. (2d) 163, 165, this Court stated with reference to the effect of an oral pronouncement by a magistrate in an ejectment case:

"The crux of the case, as indicated above, is appellant's contention that the warrant of ejectment was effective upon the oral announcement of judgment by the magistrate on Nov. 16 and not upon its actual, subsequent issuance on November 27. In view of the quoted statute, that is untenable." Section 41-104, 1952 Code of Laws for South Carolina.

A pistol of and by itself is not contraband and the owner may force its return when no longer required for the purposes of justice, unless such has been confiscated. In the instant case, Huggins was not charged with carrying concealed weapons in violation of Section 16-145, 1952 Code of Laws for South Carolina, under which a pistol may be confiscated, neither was it introduced as evidence. After the case of *State v. Stacy Huggins* was ended, Cpl. Crawford inquired informally of the Judge as to what disposition should be made of the pistol he had seized from Huggins. The Judge's response can in nowise be considered a valid and binding Order of the Court in the *Huggins case,* as that case had been ended and there was nothing pending in Court relative thereto, but was more of an oral directive in the form of advice which Crawford sought for his own benefit. There was no open announcement in Court, no notation thereabout entered upon the minutes, or anything done which would make such a part of the records of the Court.

The Attorney General's Office through Mr. Verner, who represented Appellants, and Solicitor Long, of the Twelfth Judicial Circuit, who acted as petitioner, are to be com-

mended for their services to the Courts in this case. They not only conducted the case in a commendable manner, but they filed with this Court excellent briefs which have been of great assistance to this Court.

For the foregoing reasons, we are of the opinion that the return to the Rule should have been adjudged sufficient, that the Order appealed from should be reversed and set aside, and It Is So Ordered. Reversed.

STUKES, OXNER, and LEGGE, JJ., and STEVE C. GRIFFITH, Acting Associate Justice, concur.