John GAMBLE

v.

POPE & TALBOT, INC.

v.

JARKA CORP. OF PHILADELPHIA.

Appeal of Timothy J. MAHONEY et al.

No. 13578.

United States Court of Appeals
Third Circuit.

Argued Nov. 13, 1961.

Decided July 20, 1962.

Certiorari Denied Nov. 5, 1962.

See 83 S.Ct. 187.

Biggs, Chief Judge, and Goodrich, Circuit Judge, dissented.

T. E. Byrne, Jr., Philadelphia, Pa., for appellants (Krusen, Evans & Byrne, Philadelphia, Pa., on the brief).

John J. Dautrich, Philadelphia, Pa., amicus curiae (Michael H. Malin, and White & Williams, Philadelphia, Pa., on the brief).

Before BIGGS, Chief Judge, and GOODRICH, McLAUGHLIN, KALODNER, STALEY, HASTIE and SMITH, Circuit Judges.

McLAUGHLIN, Circuit Judge.

On April 24, 1958, John Gamble, a longshoreman, commenced a personal injuries action in the United States District Court for the Eastern District of Pennsylvania against Pope & Talbot, Inc., a shipowner. On September 22, 1959, the latter with leave of court impleaded Jarka Corp. of Philadelphia, the stevedoring company which had employed Gamble. The case was tried in March of 1961 resulting in verdicts in favor of Gamble against Pope & Talbot with indemnity in favor of the latter against Jarka Corp. The merits of the litigation are not before us. Our problem is solely concerned with pretrial procedure.

In effect in the United States District Court for the Eastern District of Pennsylvania are two "standing orders" which provide as follows:

"PRE-TRIAL CONFERENCES IN OTHER
THAN PROTRACTED CASES

"(Adopted October 23, 1958)

"1. The Clerk of the Court shall list for pre-trial all civil cases which have been answered for trial on the Jury and Non-Jury Preliminary Call lists. The filing of a pre-trial mem-

orandum by all counsel is mandatory. * * *

* * * * * *

"3. * * * Not later than 30 days after the publishing of said [civil pre-trial] list, counsel for plaintiff shall file a written pre-trial memorandum with the Clerk of the Court and serve two copies on all other counsel of record.

"Within 30 days of receipt of such pre-trial memorandum, all counsel served with plaintiff's memorandum shall file a written pre-trial memorandum with the Clerk of the Court and serve two copies on all other counsel of record. * * *

"Plaintiff's pre-trial memorandum shall contain the following:

* * * * * *

"C. The names and addresses of all witnesses (except rebuttal) whom the plaintiff expects to call to testify at the time of trial. * * *

* * * * * *

"Defendant's counsel shall also include in his pre-trial memorandum the same material pertaining to defendant's case as required of plaintiff in paragraphs C, * * *.

"IMPOSITION OF SANCTIONS WITH
RESPECT TO PRE-TRIAL
PROCEDURES

"(Adopted February 8, 1960)

"For failure to appear at a pre-trial conference, or to participate therein, or to prepare therefor, the Court, in its discretion, may make such order with respect to the imposition of fines, costs and counsel fees, as is just and proper; with respect to the continued prosecution of the cause (complaint, cross-claim or counterclaim), a dismissal may be entered, or as to the defense, the preclusion of all or any part thereof, as is likewise just and proper."

In compliance with the October 23rd standing order, counsel for the plaintiff and third-party defendant filed their pre-trial memoranda with the court and served their adversaries with the requir-ed copies. The defense memorandum was not filed until the day before the pretrial conference. It was more than ten months overdue. There is no question but that counsel's lapse was unintentional. After receiving regular notice from the court clerk of the pending pretrial conference, he reviewed his file, caught the omission, and then proceeded to prepare a full memorandum.

On December 8, 1960, leave having been granted at the pretrial conference, counsel for the plaintiff filed a written motion to have the court strike the untimely memorandum. Thereafter the court filed a memorandum opinion and order denying the motion as too drastic in the circumstances but, in view of the long though unintentional delay, (1) struck the names of certain proposed witnesses appearing on the memorandum thereby precluding the defendant from calling them as witnesses at the trial; (2) imposed upon the defendant's counsel "a fine of one hundred dollars" payable to the United States; and (3) permitted the plaintiff to "submit within thirty days an appropriate order imposing upon defendant all costs, expenses and reasonable counsel fees caused by defendant's delay in filing its pre-trial memorandum." The trial was held with the results as stated.

Viewing the imposition of the fine upon him as carrying "the criminal hallmark", defendant's counsel filed a notice of appeal in compliance with the Federal Rules of Criminal Procedure (and thus well within the time requirement of the Federal Rules of Civil Procedure). He captioned the appeal in the original cause and did not name an appellee. At his request, the clerk of the court served a copy of the notice of appeal upon the United States Attorney. The latter has neither appeared nor filed a brief. Leave was granted John J. Dautrich, Esq. to appear as amicus curiae in opposition to appellant's position.

The issue is whether the district court has the power to fine counsel for a party engaged in private civil litigation for not complying with the "standing orders" of the court. Appellant does not here ques-

tion the district court's action in striking the names of the proposed trial witnesses contained in the memorandum. It is also noted that plaintiff has not submitted a proposed order covering financial remuneration for defendant's delay.

The district court justified the imposition of the fine by saying that:

"In view of the time of judicial employees of the Government wasted as a result of the late filing of this memorandum, a fine shall be paid by counsel for the defendant to the United States of America (see Standing Order of February 8, 1960). Such a fine will be more substantial in subsequent cases of such long delay in filing a pre-trial memorandum, but the fact that this is the first time in the experience of the pre-trial judge that a fine has been required is being taken into consideration in this case. Also, it is suggested to opposing counsel that, in the future, their adversary should be reminded of his delinquency if defaults and other remedies are to be sought for its long continuance."

Appellant's contention is that the district court has not been given authority and possesses no inherent power to fine an attorney who has not been held in contempt nor given a hearing. We must agree.

The trial judge did not regard the attorney's default as constituting contempt of the court; he did regard it as falling within the sanction of the standing order. The contempt designation was nowhere used in the order appealed from or in the standing order. There were no formal contempt proceedings. Appellant suggests that the court's action in fining him "had to be contempt or it was nothing." Amicus urges that it was " * * * simply * * * an exercise of disciplinary authority, with no necessary criminal connotation." He further asserts that " * * * it certainly may not be assumed that Congress intended * * * [by the contempt statute, 18 U.S.C.A. § 401, 62 Stat. 701] to destroy or limit the separate and distinct power of courts to discipline their attorneys in matters not constituting contempts."

However it be called the effect was to punish defendant's attorney for contempt in failing to file the defense pretrial memorandum within time. Amicus does not point to and we cannot find any authority for it. There is nothing in the Federal Rules which authorizes sanctions in the form of penalties to be imposed upon an attorney in a civil litigation.[1] To impose such a penalty for conduct not found to be contemptuous and without the procedural safeguards given by Rule 42 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. violates the Fifth Amendment.

Amicus next contends that even if the Federal Rules do not give explicit authority to the district court, Rule 83 of the Federal Rules of Civil Procedure, 28 U.S. C.A., authorizing the district court "to make and amend rules governing its practice not inconsistent with these rules * * * " is an appropriate source of power. With an admiralty cause involved here both Rule 83 and its admiralty counterpart, Admiralty Rule 44, 28 U.S.C.A., are applicable. Although they are an "affirmative grant of authority", see

1. 28 U.S.C.A. § 1927 provides that "Any attorney * * * in any court of the United States * * * who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs." This section is applicable only when excess costs are shown to exist. The costs are not payable to the United States as a fine, but may be payable to the United States as a party litigant whose costs were increased by virtue of the attorney's conduct. See Weiss v. United States, 227 F.2d 72 (2 Cir. 1955), cert. den. 350 U.S. 936, 76 S.Ct. 308, 100 L.Ed. 817 (1956); Motion Picture Patents Co. v. Steiner, 201 F. 63 (2 Cir. 1912). While the district court points out that the time of judicial employees was "wasted" by appellant's oversight, this is of no moment in determining costs under this section.

Miner v. Atlass, 363 U.S. 641, 647, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960); cf. United States v. Hvass, 355 U.S. 570, 575, 78 S.Ct. 501, 2 L.Ed.2d 496 (1958), still the local rule making power, while not limited to the trivial, cannot extend to basic disciplinary innovations requiring a uniform approach. Whether an attorney should be himself fined when, because of office oversight or neglect, he is late in complying with an order of the court is a substantial independent question which calls for mature consideration by the body charged with making Rule recommendations, the Supreme Court's advisory committee. See 28 U.S.C.A. § 331; Miner v. Atlass, supra, 363 U.S. at 649–650, 80 S.Ct. at 1305–1306.

Absent authority, the district court's power to penalize appellant is limited by the contempt statute, 18 U.S.C.A. § 401, and by Rule 42 of the Federal Rules of Criminal Procedure. Section 401 permits the district court to impose fines only for specified conduct enumerated therein. If the conduct does not fall within the statute, it has no such power. That problem does not arise in this appeal as there is no indication that the contempt statute was being invoked, and Rule 42 was not followed.

We stress that this is an ordinary pretrial procedure case. It is not a cause célèbre. It should be kept headed into the wind. It furnishes no need or reasonable excuse for some collateral defense of pretrial practice. The latter has long since been generally accepted by both courts, federal and state, and attorneys. The Eastern District of Pennsylvania, one of the largest (in volume) and busiest in the nation, has been a leader in establishing work-a-day pretrial methods that, despite woeful lack of judge power through the years, have been of most material assistance in properly handling an enormous trial list. This would not have been possible without the devoted, constant, expert use of them by all of the judges in the district. And the smooth, satisfactory operation of the system would not have been possible without the sincere cooperation of the bar. Both court and counsel recognize that pretrial is an in-tegral, necessary element of litigation. It is doubted that anyone affected would now willingly revert to the litigation practice as it was prior to the adoption of today's methods.

On occasion there is a slip up. Almost always it is no more than that, as in the involved instance. Usually it occurs where a date is not entered, or perhaps not carried over, or is erroneously noted; sometimes where a paper or letter is filed prematurely and forgotten until some independent reminder brings it to light. Judges are not customarily plagued with that sort of incident themselves though it has taken place with them too. Lawyers are not so fortunate. When it happens, they are embarrassed and troubled. In good faith they do what can be done to make amends. As long as a lawyer practices, once in a great while, he will be haunted by the thought that he missed a filing date. His primary distress is not over punishment but that he has neglected a duty. No matter what might be the office situation, the responsibility is his and he assumes it.

Judges know this. While they rightly demand and receive full compliance, they are mostly patient and understanding. In instances when their judgment is that affirmative action should be had in a particular set of circumstances, it is taken. Ordinarily there is nothing personal about it. In the case at bar it was the delay that was being punished, irrespective of its cause. The means employed were beyond the power of the court but the incident did serve to point up the importance of counsel meticulously observing pretrial filing date obligations. In so doing it fulfilled the commendable purpose of the trial judge, i. e., to vividly bring to the attention of the entire Eastern District bar that substantial negligence in pretrial practice will not be tolerated. But that commendable purpose with its innocent but palpably erroneous assumption of dictatorial powers over litigation, lawyers and litigants, should not now be seized upon as an opportunity to further the questionable cause of reducing lawyers in a courtroom or within its reach to puppets, com-

pletely subject to the whim and warp of the courts.

We are not dealing with the caponizing of a judge. It is not his independence that is being protected by the minority view. What the latter is doing is supporting the tactic of informally inflicting a criminal sanction without charges or hearing; where there was no "actual obstruction of justice"[2] and where counsel belatedly remedied but nevertheless remedied his unfortunate negligence and where the plaintiff's cause was not harmed. What the minority view really attacks is our "vigorous, independent bar".[3] What it really advocates is the complete take over of the trial and its collaterals by the trial judge and appellate courts. It is good to have this out in the open where it can be squarely faced. The effort to concentrate all that frightening power in the bench is too dangerous a potential to let slip by clothed in such disarming language as "simply * * * an exercise in disciplinary authority, with no necessary criminal connotation". All that "exercise" happens to be is the first giant step in stripping a lawyer of his independence and leaving him, his client and the latter's cause of action to the ukase of the court. Even Jack Cade's solution would have left the lawyer his self-respect.

That the trial court's act should be urged as justified by some sort of judge-made law makes it doubly abhorrent. Kept within its proper bounds the district court decision is merely a mistake, to be corrected in stride. Given the motivation attributed by the minority to the principle involved, it is an ominous doctrine that should be buried deep and forgotten.

2. In re McConnell, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962).

3. In re McConnell, 370 U.S. 230, 82 S.Ct. 1288 (1962).

1. In the notice of appeal, opposite "Name and address of Appellant," has been set out not only the name of Timothy J. Mahoney, Esq., the member of the bar of the court below who failed to comply with the standing order in question, but also the other partners of Messrs. Krusen, Evans and Shaw. The "Statement

Paragraph (2) of the order of the district court of February 23, 1961, which is the only part of said order from which appeal has been taken, will be reversed. The case will be remanded with instructions that judgment be entered in favor of appellant (counsel for the defendant) on paragraph (2) of said order.

HASTIE, Circuit Judge (concurring in result).

I agree that the court below, although acting with the best intention, has exceeded its power by imposing a criminal sanction without legislative authority for conduct which did not amount to contempt of court. Accordingly, I concur in the reversal of the challenged part of the order of the district court. However, the principal opinion includes references to the contrary position in which I do not join.

Judge KALODNER joins in the foregoing.

BIGGS, Chief Judge (dissenting).

I regret that I cannot agree with the majority opinion. I do agree that the issue is whether a United States district court has the power to "fine" or impose a sanction on counsel for a party engaged in private civil litigation because the attorney[1] has not complied with a "standing order" or rule of the court requiring him to file a timely pretrial memorandum. The majority strikes down the fine on the ground that the court has not been given the authority and possesses no inherent power to impose upon counsel what, in the majority's view, is a penalty for criminal contempt.

of Judgment" appealed from is "The Order of the United States District Court for the Eastern District of Pennsylvania (Francis L. Van Dusen, Judge) entered February 23, 1961, sentencing the Appellant Mahoney or possibly all of the partners trading as Krusen, Evans & Shaw as more fully set out in the said Order of February 23, 1961." The form of the appeal is mentioned at a later point in this opinion. For the purposes of this opinion, Timothy J. Mahoney will be treated as the appellant.

There were in fact no formal proceedings before the penalty was imposed on the appellant. There was a hearing on a motion by the plaintiff to strike the late pretrial memorandum, and there was discussion of a range of possible sanctions including fines on counsel. The trial judge deemed the striking of the memorandum to be too drastic a penalty and instead imposed upon the tardy attorney the fine appealed from. The distinguished counsel serving as *amicus curiae* takes the position that the action of the court below was "simply * * * an exercise of disciplinary authority, with no necessary criminal connotation." I agree with this statement.

The United States District Court for the Eastern District of Pennsylvania is one of the busiest in the federal system. At the end of the fiscal year 1961, it had pending over 4000 civil cases,[2] the type of litigation most difficult to dispose of and more time-consuming than any other. A high degree of cooperation between bench and bar must be secured if calendar control and prompt disposition of these civil cases are to be effected.

That high degree of cooperation has, in general, been attained. The great majority of members of the bar join with the judges in vigorous and sincere efforts to bring the congested dockets up to date. But a few attorneys are habitually dilatory. The often unconscious mental attitude of this small group contributes substantially to calendar congestion. It is the banal but brutal fact that justice delayed is justice denied.

For many centuries it has been the practice to impose the shortcomings of the counsel upon the client. When a required pleading, for example, has not been filed in time or default has been incurred by reason of the failure of counsel to perform his duty, it has been usual to impose costs or some other penalty upon the party and not on his counsel.[3] This seems as unrealistic as imposing a penalty on a passenger because the railroad train on which he rides is late because of the dereliction of the operating crew.

Here we are concerned specifically with procedures relating to the pretrial conference. I think the great value of such conferences in aiding the speedy disposition of civil cases cannot be seriously questioned. As was said in Link v. Wabash R.R. Co., 291 F.2d 542, 547 (7 Cir. 1961), aff'd, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962):

> "Pre-trial procedure has become an integrated part of the judicial process on the trial level. Courts must be free to use it and to control and enforce its operation. Otherwise, the orderly administration of justice will be removed from the trial court and placed in the hands of counsel. We do not believe such a course is within the contemplation of the law."

In Link the action was dismissed because of the failure of the plaintiff's counsel to attend a pretrial conference. The sanction—a most severe one—was visited on the party-plaintiff rather than on his counsel. See also Payne v. S.S. Nabob, 302 F.2d 803 (3 Cir. 1962).

To the end that pretrial might be carried on effectively in the court below, the first of the "standing orders", that of October 23, 1958, set out in the majority opinion, was adopted. As I understand it, the majority does not doubt, nor the appellant question, the power of the district court to make such an order. In Padovani v. Bruchhausen, 293 F.2d 546, 548 (2 Cir. 1961), Judge Clark points out that the purpose of Rule 16 of the Federal Rules of Civil Procedure is to enable the court to call a conference to *prepare* for trial—that is, *the* pretrial conference. Rule 83 authorizes the district courts to

---

2. See Table C 1, Annual Report of the Director of the Administrative Office of the United States Courts, 1961.

3. Congress has broken through this band of illogic by enacting 28 U.S.C. § 1927, which provides, as the majority points out, that "any attorney * * * in any court of the United States * * * who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs."

make rules governing their practice "not inconsistent" with the Federal Rules of Civil Procedure. Certainly the first standing order recited in the majority opinion is consistent with Rule 16. It is not, in my opinion, an effective disposition of the contention of *amicus* to hold that the standing order is not the equivalent of a rule of court. This argument is based on an unappealing technicality.

Dealing now with the second standing order of the court below, that of February 8, 1960, under which the sanction on counsel was imposed, that also has the validity of a rule of court made pursuant to Rule 83. It is a reasonable exercise of the authority given district courts by the Supreme Court in accordance with that Court's rule-making power under the Act of June 19, 1934, 48 Stat. 1064, 28 U.S.C. § 2072. True, the impact of the sanction is shifted from the party to his attorney but it seems to me to be the better rather than the worse for this reason. The argument of the majority that the power of the district court to make the standing order should not have been exercised because the result would be a lack of uniformity throughout the districts overlooks the fact that there is no pressing need for uniformity in respect to pretrial conferences. Some courts are not troubled with congested dockets; others are. Indeed, if uniformity were a goal in itself Rule 83 would serve no purpose at all. The Rule serves to reserve to the respective district courts a large degree of local judicial autonomy in rule-making and provides for wide variations in administrative practices among them. It is clear to me that the standing orders of the district court do not conflict but rather are in harmony with the Federal Rules of Civil Procedure.[4]

Assume, however, that a United States District Court gains no authority under the Federal Rules of Civil Procedure to establish the standing order of February 8, 1960, under which the penalty was imposed upon the tardy counsel. I conclude nevertheless that the district court possesses the inherent power to make both standing orders, the last as well as the first. The conception of a court helpless to control its calendar is a hopeless one.

The power of a court to discipline members of its own bar can scarcely be doubted seriously. An attorney is under no obligation to seek admission to the bar of a United States district court. He is at liberty to abstain from membership in that or any other bar. But when he does apply and is admitted he secures certain privileges and also assumes definite obligations.

The power of a court to impose appropriate and reasonable sanctions upon those admitted to its bar is a familiar phenomenon and lies within the inherent power of any court of record. Typical of that power is the authority of a court to grant a new trial of its own motion, to dismiss a complaint for want of prosecution[5] or in order to effect the ends of justice,[6] to invoke the aid of an auditor,[7]

---

4. The appellant places great emphasis on Miner v. Atlass, 363 U.S. 641, 648, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960), but I cannot perceive in that decision support for his contention that the standing order is invalid as being inconsistent with the Federal Rules of Civil Procedure. The failure of the Federal Rules to provide for the details of pretrial procedure affords no basis under the Miner case for the assertion that the field is preempted. Mr. Justice Harlan, speaking for the Court in Miner, seems to concede that the failure of the Supreme Court to include discovery depositions in the admiralty rules did not disclose the intention *per se* to foreclose the district courts from adopting appropriate local rules under the admiralty equivalent of Rule 83 of the Federal Rules of Civil Procedure. In addition, the Court disclaimed all intention of deciding that, whenever the rules dealt with part but not all of a subject, the practices not provided for may not be dealt with by local rules. The Supreme Court stated: "We deal here only with the procedure before us, and our decision is based on its particular nature and history." 363 U.S. at 649, 80 S.Ct. 1305.

5. Hicks v. Bekins Moving & Storage Co., 115 F.2d 406 (9 Cir. 1940).

6. United States v. Apex Distributing Co., 270 F.2d 747 (9 Cir. 1959).

7. Ex parte Peterson, 253 U.S. 300, 314, 40 S.Ct. 543, 64 L.Ed. 919 (1920).

to call for a pretrial conference,[8] to protect a litigant against costs created by his counsel,[9] and to make rules,[10] in addition to the power to discipline members of the bar.[11]

When we look at the disciplinary problem presented by the appellant, we perceive at once the reason—indeed, the necessity—for a standing order of the sort here under discussion authorizing the imposition of a penalty upon him. The facts are not in dispute. The case appeared on the civil pretrial list published in the autumn of 1959. The plaintiff filed his pretrial memorandum on December 12, 1959. The pretrial memorandum of the defendant, represented by this appellant, was due under the standing order[12] first quoted in the majority opinion on January 11, 1960. The appellant had received a letter from the plaintiff dated December 9, 1959, accompanying the latter's pretrial memorandum and had received a letter accompanying the third-party defendant's pretrial memorandum on January 11, 1960. Approximately two weeks prior to November 23, 1960, the appellant received the usual formal notice, sent by the clerk of the court, that the pretrial conference would be held on November 23, 1960. The appellant disregarded all these warning notices "through inadvertence". The defendant's pretrial memorandum, finally prepared by the appellant and filed about ten months late, was received by the trial judge the night before the pretrial conference. The trial of the case was delayed approximately three weeks and might have been delayed longer had not the trial judge proceeded vigorously and promptly despite the appellant's tardiness. See 191 F.Supp. 763 (1961).

The appellant, for obvious reasons, desires to give the proceedings a criminal cast. He asserts that the appeal has been taken pursuant to the Federal Rules of Criminal Procedure and uses the word "sentencing" to characterize the order appealed from. But how the appellant chooses to describe his appeal is, in my opinion, not important; the notice of appeal should be viewed, I think, as sufficiently broad to authorize this appeal whether it is civil or criminal. What is important, however, is that these proceedings are of a different nature from those for criminal contempt. The power to discipline springs from a different source than does the power to punish for criminal contempt. See 18 U.S.C. § 401. The appellant's dereliction did not amount to contempt. The trial judge treated the failure to file the pretrial memorandum—annoying as it was and, if repeated frequently, destructive of the judicial process—as a peccadillo rather than a sin. There is no suggestion of wilfullness, a necessary element of contempt,[13] on the part of the appellant. And since, for these reasons, I do not view this as a contempt proceeding, the recent ruling of the Supreme Court in In re McConnell, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434, construing 18 U.S.C. § 401, has no application here.[14]

8. Fanciullo v. B. G. & S. Theatre Corp., 297 Mass. 44, 8 N.E.2d 174 (1937).

9. Toledo Metal Wheel Co. v. Foyer Bros. & Co., 223 F. 350 (6 Cir. 1915).

10. State ex rel. Hawke v. LeBlond, 108 Ohio St. 126, 140 N.E. 510 (1923).

11. In re Schlesinger Appeal, 404 Pa. 584, 629, 172 A.2d 835, 856 (1961), cases cited in dissenting opinion.

12. It is interesting to note that the appellant in his main brief in this court refers to the standing order providing the terms and conditions for pretrial conferences, that of October 23, 1958, as a "rule".

13. See e. g., United States ex rel. Porter v. Kroger Grocery & Baking Co., 163 F.2d 168 (7 Cir. 1947); Uhler v. Superior Court, 117 Cal.App.2d 147, 255 P.2d 29, 256 P.2d 90 (1953); Lamm v. Lamm, 229 N.C. 248, 49 S.E.2d 403 (1948); Raszler v. Raszler, 80 N.W.2d 535 (N.D.1956); State v. Yates, 208 Or. 491, 302 P.2d 719 (1956); Long v. McMillan, 226 S.C. 598, 86 S.E.2d 477 (1955). See also Dangel, Contempt § 171. And Bouvier's Law Dictionary (Rawle's 3rd rev.) states that "contempt" is "a wilfull disregard or disobedience of a public authority."

14. The writer of this opinion was at first somewhat troubled by the use of the phrase "and none other" in Section 401, Title 18 U.S.C., since it seems to prohibit any fine imposed by a court of the

In conclusion, I point out that the delays of the offending counsel were freely admitted by him. The two standing orders of the district court gave him ample notice and permit the raising of no valid issue as to due process.

I would affirm the order of the court below.

GOODRICH, Circuit Judge (concurring in dissent).

It seems to me that the position taken by the Chief Judge is clearly right. It is true that the "inferior courts" spoken of in the Constitution are courts of limited jurisdiction. But because a court has authority to deal with only specified types of cases or controversies does not mean that the judge of such a court is caponized. So far as the things he deals with are concerned, he has the authority, surely, of any judge in any court of record.

No one doubts that the judge has authority to run his court. He may tell counsel to sit down; he may have removed from the room persons who interfere with the proceedings. He sets dates for argument. Court is opened and adjourned at such times as he specifies. He certainly is not less in control of his courtroom than is a teacher in control of his classroom.

Now the judge may also discipline the members of the bar of his court and, in cases calling for it, may suspend them or punish them for contempt. It seems to me clear that with all this authority which the judge undoubtedly has that he can also impose sanctions for the disciplining of lawyers who, in matters not amounting to contempt, do not obey rules. If a judge is going to organize, either alone or with fellow judges, the business of the court, there must be authority to impose reasonable sanctions for the breach of reasonable rules.*

United States except upon conviction of a crime, which in this instance, says the appellant, can be only the crime of criminal contempt, if there be a crime at all. But in my view the phrase quoted modifies the whole of the sentence and not merely the word "power". It would follow that the words of restriction are not applicable under the circumstances at bar.

* The court, following Judge GOODRICH'S death on June 25, 1962, ordered this opinion, Concurring in Dissent, filed.