19473

The CITY OF SPARTANBURG, Respondent, v. KIMBRELL'S INVESMENT COMPANY, Inc., Appellant.

(191 S. E. (2d) 150)

*Messrs. Drawdy & Faucette,* Columbia *for Defendant-Appellant,*

206

*T. E. Walsh, Esq.,* of Spartanburg, *for Plaintiff-Respondent,*

August 28, 1972.

Bussey, Justice.

This action as commenced was one for a declaratory judgment but it has progressed by stages and in effect to a proceeding for a mandatory injunction and a citation and punishment for contempt of court. A most complicated situation

followed what has proved to be a most unfortunate decision by the City of Spartanburg in a condemnation proceeding. A related case of interest is that of *Galbraith et al. v. City of Spartanburg,* 255 S. C. 380, 179 S. E. (2d) 37.

For a number of years prior to 1919, one J. T. Harris owned a lot at the Southeast corner of North Church and St. John Streets in the City of Spartanburg, which measured approximately one hundred feet in front on North Church Street and in depth approximately one hundred forty feet on St. John Street. Such lot was occupied by a building known as the Harris Theater Building, which was condemned for theater purposes about 1919, whereupon the said Harris converted the building into a three story structure partitioned into several stores. The southern portion of the Harris Theater Building is currently owned by the defendant-appellant herein, Kimbrell's Investment Company, Inc., and the northern portion thereof bordering on St. John Street is owned by the heirs or devisees of Dr. J. C. Oeland, having been conveyed to his executor in satisfaction of a mortgage in August 1931. Collectively, these parties will be referred to simply as Oeland.

The property immediately to the south of the Harris Theater Building is owned by an entity referred to as Hammond, Brown, Jennings, or simply H B J, and to the south thereof is a store occupied by Bridges Furniture Company. There is evidence to the effect that the southern wall of the Harris Theater Building serves as the northern wall of the Hammond, Brown, Jennings property, and that such wall supports the roof trusses of the Harris Theater Building. The origin and nature of the rights of H B J in and to this wall, if any, do not appear in the record. The status and connection of the store of Bridges Furniture are not clear.

The roof of the Harris Theater Building, now owned partly by Oeland and partly by Kimbrell, is supported by trusses running from north to south, said trusses in turn being supported by certain lally columns erected on each side

of and somewhere near the center of the building when it was a theater. The second and third floors of the remodeled theater building are supported by partition walls running from east to west, one of these walls being located upon the dividing line between the Oeland and Kimbrell lots as found by the court below. Such wall is of brick and for a portion of its length it is eight inches in width but the remaining portion is twelve inches in width.

In 1967, the City commenced an action against Oeland to condemn its property for public street purposes in the interest of widening St. John Street. This case was settled by an agreement which was embodied in a decree of the court dated December 20, 1967. Under the agreement, the City of Spartanburg took title to approximately thirteen feet of land for street purposes and agreed with Oeland to demolish and remove the building from the entire Oeland lot. In accordance with the agreement, the decree contained the following provision:

"Any obligation of the landowners (Oeland) to the adjoining property owners who may have rights in the party wall will be discharged by the City of Spartanburg to the extent of any legal obligations of the landowners (Oeland) in connection with the removal of the building from the entire lot."

In February 1969, the City instituted this action against Kimbrell asking that the court determine the legal rights of Kimbrell and Oeland with respect to the joint or party wall separating their respective portions of the Harris Theater Building, and the making of any structural modifications to the Kimbrell portion of the building needed as a result of the demolition of the Oeland portion of the building. The City contended that Oeland (and it standing in Oeland's shoes) was not obligated to expend any money to protect the Kimbrell portion of the building or the cost of repairing or replacing the party wall upon its demolition of the Oeland portion of the building. Kimbrell, by answer and counterclaim alleged that by reason of the construction of

the building over sixty years prior to the commencement of the action and the physical characteristics thereof, including the support columns, trusses, etc., over and upon the Oeland property, it had an easement "in gross, of necessity, prescription, servitude, or as a right of lateral or sub-adjacent support."

The cause was heard before the Resident Judge of the Seventh Judicial Circuit without a jury and he, on February 17, 1970, filed a lengthy order in which he made numerous findings of fact. He held, *inter alia,* that Kimbrell had no easement for support; that the City acting for Oeland was entitled to remove the Oeland portion of the building by giving due notice to Kimbrell; that Oeland, and accordingly the City, was not obligated to pay Kimbrell for any cost incurred in making the common wall an exterior one. Oeland was given the right to sever the roof trusses at the property line upon providing temporary support therefor for a period of six months, and after six months, given the right to remove any portion of the common wall which remained upon the Oeland lot. Just how Oeland or the City could remove one half of an eight inch brick wall without damaging or destroying the remaining four inches on the Kimbrell property has not been suggested by any one.

The decree provided the further retention of jurisdiction of the cause for guidance of the parties should such be needed. Kimbrell commenced an appeal therefrom but did not timely perfect the same with the result that all of the holdings of His Honor, right or wrong, became the law of the case.

In October 1970, Kimbrell filed a motion asking the court to assume supervision of the preparation of plans, the selection of a contractor and the demolition of the Oeland portion of the building. Such motion was denied by order of Judge Weatherford on November 28, 1970, which implemented his order of February 17th in certain particulars, and which will be hereinafter quoted from.

On September 1, 1971, the City filed a petition which, *inter alia,* asked that Kimbrell and Winthrop Stearns, an officer and agent of Kimbrell, be ruled to show cause why they had failed to comply with the prior orders of the court. Upon issuance of such rule and a return thereto, a hearing was held and an order issued, dated September 18, 1971, holding Kimbrell and Stearns in contempt and granting other relief to the City. Motions were made by Kimbrell for a new trial upon after discovered evidence and for an order making HBJ and Bridges Furniture Company parties to the action, both of which motions were denied by the order of September 18, which is now appealed from. It is important to note, we think that the City here is acting in lieu and stead of Oeland, standing in Oeland's shoes, with its rights, duties and responsibilities being neither more nor less than those of Oeland who is not a party to this action.

Pertinent to the questions raised on appeal are portions of the court's order dated November 28, 1970, from which we quote:

"It appears highly desirable for the demolition of the Oeland building and the modifications in the Kimbrell building to proceed together and in harmony with each other. Therefore, it appears that it would be in the interest of all parties if the lally columns which support the trusses and roof on the Oeland side remain in their present location for a period of six months from the date of this Order as well as the entire party wall remain in its location for a period of six months from the date of this Order.

"During this time, Kimbrell will be responsible for preparing plans and specifications for the support of its floors, roof and wall on its side so that at the end of the six month period, Oeland shall have the right to remove the partition wall located on its property if it is so advised. However, Oeland is not obligated to remove this wall and if it remains and at any time in the future, Oeland desires to tear it down, Kimbrell should have not less than ninety days notice.

"The Court advises both parties that time is of the essence of this matter since the City is obligated to remove the building from the Oeland property and since Oeland is entitled to have these improvements removed. Due to the extensive litigation, this has not yet been possible or feasible; therefore, both parties should proceed with utmost diligence in completing the demolition and the preparation of the Kimbrell building for bearing the load of all its floors, wall and roof.

* * *

"The Court restates its finding in the Order of February 17, 1970, to the effect that no obligation is owed by Oeland to Kimbrell in the demolition of the Oeland building except to give reasonable notice of the time, place and manner of demolition or removal of the Oeland improvements so that Kimbrell may take the necessary measures and make such modifications of its building as are needed to protect its own improvements. The cost of any and all shoring, any and all weather protection, any and all modifications in the roof trusses, the new wall or other structural changes needed by Kimbrell must be borne by Kimbrell. The only obligation on the part of Oeland (the City of Spartanburg acting for Oeland in the demolition) is to act in a reasonable and prudent manner under the circumstances of this situation and not to act wilfully and negligently.

"At the hearing before me, both parties recognized that certain unknown conditions or dangers might arise during the course of the demolition of the Oeland building. Therefore, the Court directs that the Defendant, Kimbrell's Investment Company, Inc., appoint some person such as an engineer, architect, or contractor, who will have the technical skill and know-how and be granted the power to deal with the City's engineer or contractor so as to handle any emergencies or contingencies which might arise although none are foreseen at this time. If any such foreseen contingencies or dangerous conditions arise during the course of demolition, immediate notice should be given to Kimbrell who

will have fifteen days within which to make such modifications to its building so as to protect it in the light of the new found conditions."

Kimbrell appealed from this order but later abandoned such appeal. Apparently more than one factor contributed to the delay but, in any event, no definite steps were taken toward the demolition of the Oeland building until March 12, 1971, when the City engineer sent Kimbrell specifications on which bids would be requested for demolition of the building. On March 20th, the City was advised that Mr. Prather had been designated as engineer of Kimbrell in accordance with the court's order of November 28, 1970. On April 15, 1971, counsel for Kimbrell's responded to. a letter of April 14th from counsel for the City. In such letter of April 15th, Kimbrell's counsel advised that it was his interpretation of the order that Kimbrell was not required to do any work or alterations to its building which it might deem necessary or advisable until demolition had progressed to the point where it could better determine needs, steps, costs. Counsel for Kimbrell also called attention to the threat of liability to or at least suits by property owners to the south for any affirmative action taken by Kimbrell. He advised that under such circumstances, Kimbrell had no choice but to take a hands off attitude until the demolition of Oeland's property was well on its way. If counsel for the City then disagreed with the interpretation of the order by counsel for Kimbrell, the record does not so reflect. Exhibits in evidence show that the City was advised by letters on behalf of Hammond, Brown, Jennings and Bridges Furniture Company of the likelihood of damage to their respective stores should the City proceed with the demolition of the Oeland building as planned and of their intention to hold the City liable for any damage which ensued. Kimbrell was aware of these communications which were the basis of its expressed reluctance to take any affirmative action or part in the accomplishment of the actual demolition undertaken by the City.

On May 17, 1971, counsel awarded the contract for demolition to one Mr. Guy who actually commenced and ceased demolition on May 28th. By letter dated June 1st, Mr. W. W. McWhorter, a consulting engineer retained by the City, advised it that the continued demolition of the Oeland building would be dangerous because of "conditions revealed by demolition" as follows. "1. Deterioration of brick and mortar in brick wall separating Oeland from Kimbrell. This was revealed by removal of flooring at the second floor. 2. Deterioration of masonry wall supporting end bearing of steel truss over the proscenium arch on the Oeland side. This has been more fully revealed by removal of ceiling below."

In the meantime, on May 31st, Mr. Stearns for Kimbrell advised the City by letter that Kimbrell's of Spartanburg, which occupied Kimbrell's portion of the premises, was vacating and moving to another location because of the demolition and the danger arising therefrom. This letter dealt in some detail with the possibility of liability on the part of Kimbrell to its neighbors to the south, the prohibitive cost of protecting, saving and repairing its building in connection with and following the demolition of the Oeland building, and, in effect, advised the City of its tentative plans to abandon its building and to build a new one when the City had concluded with its demolition activities. If the City replied to this letter, the record does not so reflect, but on June 4th, the City in stated compliance with the order of November 28th, notified Kimbrell of the matters communicated to it by McWhorter on June 1st. From June 4th until the City's petition of September 1, 1971, it does not appear that anything further was done by either party to either accomplish the demolition of the Oeland portion of the building or to repair, support or protect Kimbrell's portion of the building which it had determined to abandon.

In the Order of September 18th, presently appealed from, the court found Kimbrell and Mr. Stearns guilty of wilful and intentional contempt of the court for failing to abide by the order of November 28, 1970. They were sentenced to pay

a fine of $5,000.00, but the payment of such fine was held in abeyance for a period of thirty days until the City of Spartanburg and Kimbrell could furnish the court an accurate estimate of the type and cost of temporary repairs needed inside the Kimbrell building to permit the demolition of the Oeland building. The court reserved the right to modify the fine dependent upon information furnished as to temporary repairs needed, the cost thereof and a program for prompt demolition of the Oeland building.

*Inter alia,* it was ordered that upon Kimbrell's failure "to make temporary modifications, bracing, and shoring to its building which would support its roof structure and wall and enable the Oeland building to be demolished with safety" the City was authorized to make such modifications as were agreed upon by the engineer for Kimbrell and the engineer for the City and charge the cost to Kimbrell. The City and its agents were authorized and were given full access to Kimbrell's building for the purpose of carrying out the order of the court, and it was further provided that if the cost of the aforesaid temporary modifications was not paid for by Kimbrell, that the same should constitute a lien upon its real estate.

It is urged by Kimbrell that such provisions are violative of its rights under Article I, Section 17 of the Constitution, and we agree. It is there provided, *inter alia,* as follows:

"Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor."

Under the unappealed from orders of February 17, 1970 and November 20, 1970, it is now the law of the case that Oeland, and/or the City instead, has the right to proceed to demolish in accordance with the terms of such orders. It is also the law of the case that it is the responsibility of Kimbrell to take whatever action it deems necessary or advisable for the protection of its portion of the building, but not until the order here appealed from do we find any provision which

expressly requires Kimbrell to undertake positive, affirmative action or expend any substantial sum of money which it does not deem advisible in the interest of protecting its property.

The testimony of the consulting engineer retained by the City was to the effect that temporary support for the Kimbrell portion of the building to make safe the continued demolition of the Oeland portion of the building would be some twenty to twenty-five thousand dollars. There is also evidence that permanent repair, support, etc. would cost fifty thousand dollars. The complained of provisions of the order constitute a taking of private property without the consent of the owner and without any compensation therefor. In a sense, it might, perchance, be a taking for "public use" in that such indirectly follows from the acquisition by the City of a right of way for street purposes. But, for the purpose of this action, where the City stands strictly in the shoes of Oeland, the relief granted the City in effect authorizes the taking of private property for private use without the consent of the owner, and without compensation. No authority was cited by the lower court for its action in this respect and none is even suggested by counsel for respondent on appeal. To the contrary, the question is simply ignored. We are of the opinion that the court was clearly in error.

We are also of the view that the lower court was clearly in error in adjudging Kimbrell and Stearns guilty of contempt of court and subjecting them to punishment therefor. There can be no criminal or quasi-criminal contempt unless there has been a wilful disobedience of an order of the court. *Long v. McMillan,* 226 S. C. 598, 86 S. E. (2d) 477.

"Sec. 52. Indefiniteness of allegedly violated order as defense.

"Before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him, and the command

must therefore be express rather than implied. Indefiniteness and uncertainty in a judgment, order, or decree may well constitute a good defense in proceedings for contempt based on violation of the judgment, order, or decree. The very nature of the proceeding in either civil or criminal contempt for an alleged disobedience of a court order requires that the language in the commands be clear and certain. Whether the allegedly violated order contains such language depends upon the circumstances of the individual case." 17 Am. Jur. (2d) 54, Contempt. Sec. 52.

The adjudication of contempt was predicated upon the following facts. Mr. John W. Prather, an engineer, was consulted by Kimbrell in the early stages of this proceeding and testified as a witness in the original hearing which resulted in the order of February 17, 1970. At some stage, Mr. Prather and/or his firm prepared for Kimbrell plans and specifications as to what might be done with Kimbrell's portion of the building, both temporarily and permanently, to protect and preserve the same should Kimbrell decide that its portion of the building was worth saving. Logically, whether or not such plans were ever used would depend to a degree on what occurred in the course of the Oeland demolition and whether or not Oeland elected to remove or leave the common wall. Mr. Stearns, acting on the advice of counsel, instructed Mr. Prather not to disclose these plans to the City and that in dealing with the City he was to listen, but not offer any suggestions or advice to the City or its consulting engineer as to how it should proceed with the demolition task it had voluntarly undertaken. Admittedly, such instructions were given but precisely when such was done is not clear.

Under all of the circumstances of the case, we fail to see where such instructions constituted a violation of the court's order of November 28, 1970, or any contempt thereof. The particular order and its intent and meaning have to be considered in the light of all circumstances of the case, including the pleadings. No pleading which preceeded the

November 1970 order sought any mandatory relief whatever against Kimbrell, and as we construe this order, the only mandatory provision therein directed to Kimbrell was the appointment of an engineer with power to deal in the event of any unforeseen emergency or contingency. Pursuant to this provision, Kimbrell appointed Mr. Prather as its engineer, and so notified the City. Under the undisputed testimony no unknown conditions, dangers, unforeseen emergencies or contingencies have arisen which would call upon Mr. Prather to deal with the City's engineer thereabout.

At the September 1971 hearing which resulted in the order now appealed from, both Mr. Prather, Kimbrell's engineer, and Mr. McWhorter, the City's engineer, testified. Mr. Prather testified to the fact that there was nothing new or unforeseen about the conditions referred to in Mr. McWhorter's letter of June 1, 1971, to the City, given as a basis for stopping demolition the same date it started, May 28, 1971. He testified to the effect that what tearing away was done on May 28th simply revealed the conditions, the probable existence of which he had testified to at the first trial. Mr. Prather's testimony that there was nothing new or unforeseen thereabout was not at all disputed or contradicted by Mr. McWhorter in his testimony.

It is clear, we think, that there is no evidence that Mr. Prather failed to act upon an unforeseen emergency or contingency in violation of the order of the court, let alone that he was instructed so to do by Mr. Stearns.

The plans and specifications prepared by Mr. Prather for Kimbrell were contigent ones which, according to the evidence Kimbrell's Board of Directors elected not to follow because the cost of pursuing the same was approximately fifty thousand dollars, which added to other needed repairs, made the cost of saving its portion of the building economically inadvisable. Whatever mandatory effect His Honor may have had in mind when framing his order of November 28, 1970, we find nothing in the language thereof which either expressly or impliedly required Kimbrell to furnish the City such

contingent plans or specifications, or to furnish the City any engineering advice as to how is should proceed with its problem. We conclude that there is here simply no evidence warranting a finding of a wilful contempt of any order of the court.

Kimbrell argues that there was error in the refusal of its motion for a new trial on after discovered evidence. We have no hesitancy in concluding that Kimbrell simply failed to make a sufficient showing to entitle it to a new trial on this ground.

Lastly, we reach the contention that the court erred in refusing Kimbrell's motion for an order joining additional parties. A serious question is presented as to whether or not His Honor's decision in this respect was influenced by error of law, which in turn is dependent to some extent on whether all of his original holdings with respect to the common wall between Kimbrell and Oeland, now the law of the case, were completely correct, and, as to such, to say the least there is grave doubt. In view, however, of our other holdings herein, it becomes unnecessary to decide whether or not there was prejudicial error in refusing such motion. In the absence of Kimbrell being required by the court to take affirmative steps in connection with the demolition, undertaken by the City on behalf of Oeland, it will not be compelled herein to take any action which might give rise to liability on its part to one or more of its neighbors to the south.

To summarize, we find no error in denying Kimbrell's motion for a new trial and find it unnecessary to determine whether there was error in refusing the motion for joinder of additional parties. The remaining provisions of the circuit decree are hereby

Reversed.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.